**In re TUCKER et al.**

No. 2552.

Court of Customs and Patent Appeals.

Jan. 21, 1931.

V. M. Dorsey, of Washington, D. C. (S. F. Parham, of Washington, D. C., and L. G. Bates, of Hartford, Conn., of counsel), for appellants.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

Claims 1, 12, 45, and 46 of appellant's application for a patent for an improvement of shear structure for glass machinery were rejected by the primary examiner and the Board of Appeals of the Patent Office, and from the decision of the latter, appellant appeals here.

The four claims appealed were rejected on the reference, Miller, 1,130,919.

The original application contained many claims for many different parts of the glass machine involved. The claims appealed are concerned only with an improvement on the shears for periodically severing the suspended, molten charges of glass so as to permit same, in the proper amount, to fall into the mold.

The appealed claims read as follows:

"1. A shear structure comprising a pair of shears movable into overlapping relation, and means for varying the degree of overlap of said shears while in operation, said means being adapted to mechanically insure the same degree of adjustment of each blade."

"12. A shear structure comprising a pair of shears movable into overlapping relation, and means for simultaneously adjusting the shears to vary their degree of overlap while in operation."

"45. A shear structure for a glass feeder comprising a pair of pivotally mounted overlapping shear blades and means for adjusting said shears simultaneously around their pivotal axis to vary the degree of overlap.

"46. A shear structure for a glass feeder including a pair of pivoted shear blades and means for simultaneously adjusting the shear blades to vary the degree of overlap of the shear blades, said means being in addition to the mechanism for effecting the periodic opening and closing of the shears."

It will be noticed that claim 1 calls for the varying of the degree of overlap of the shear blades while in operation, and that it calls for the means to mechanically insure the same degree of adjustment for each blade. Claim 12 is substantially the same, except that it calls for simultaneous adjusting of the shears to vary the degree of overlap while in operation. Claim 45 calls for the simultaneous adjusting of the shear blades around their pivotal axis. Claim 46 calls for means for simultaneously adjusting the shear blades, which means should be in addition to the mechanism for affecting the periodic opening and closing of the shears.

We have examined the Miller patent, supra, with care, and we do not find in Miller the same structure as is disclosed by the applicant and as is suggested by his claims 1 and 12. Miller has no means for adjusting the blades while in operation. The machine must be stopped before the blades can be removed or adjusted. The means of adjustment of applicant is upon a principle entirely different from that of Miller.

In discussing the feature of the claims calling for adjustment while in operation, the examiner stated: "The patent [Miller] does not state that the degree of overlap or the relation of one blade to the other may be adjusted while the shears are in operation, but it is not seen that there would be any difficulty in adjusting the support 20 toward or away from the cylinder A during the operation of the shears." We do not so understand the Miller mechanism and, as we view it, it could not be adjusted while in operation.

It seems to us that Miller was seeking to solve the problem only of quick removal of the shear blades, while applicant seems to have successfully solved the problem not only of making the mechanism adaptable for quick removal of the blades, and for adjustment of the same, but what seems to us to be quite important, has also solved the problem of adjusting the same while the machine is in operation. We are not advised as to how important this function is or how frequently shear blades must be adjusted, but it certainly is a new and what seems to us a useful function, and we believe it required invention to produce it. There is no contention anywhere that any one in the art has ever claimed to have completed a mechanism for simultaneously adjusting shear blades to vary their degree of overlap while the machine was in operation.

■ It is argued in support of the board's position that mere adjustability of parts does not constitute invention, citing Peters v. Hanson, 129 U. S. 541, 9 S. Ct. 393, 32 L. Ed. 742; Smyth Mfg. Co. v. Sheridan et al. (C. C. A.) 149 F. 208. It is not claimed that the invention here rests in mere adjustability of the shear blades. Appellant contends that he discloses a mechanism for adjusting the blades in a new and improved way, producing a new result, and does the same while the machine is in operation. This is more than merely making certain portions of the mechanism adjustable. We agree with this contention.

■ With the conclusion of the primary examiner and the Board of Appeals that appellant's invention was anticipated by the prior art referred to, we cannot agree; but after exhaustive research and very careful consideration, we find that we must agree with the Patent Office tribunals in their rejection of all the claims, but as to claims 1 and 12 for a reason other than the reason they assign. Claims 45 and 46 are also probably objectionable, as argued by the solicitor, for the reason that invention ordinarily cannot rest in mere adjustability. Making parts adjustable is not invention, if the ordinary ingenuity of a skilled mechanic can accomplish it. Smyth Mfg. Co. v. Sheridan et al. (C. C. A.) 149 F. 208.

■ In our judgment the claims are too broad and for that reason should have been rejected. It will be noticed that no particular structure for simultaneously adjusting the shears while in operation is claimed, but that claims 1 and 12, in effect, seek a monopoly upon any means which brings about that result. True enough in some infringement suits, where claims which were regarded as too broad were under consideration, the courts, in determining the question of infringement, determined whether the inventor's invention was infringed, not by considering the full scope of the claim, but by giving the claim no more scope than was disclosed in the drawings and specifications, as, for instance, in Burr v. Duryee, 68 U. S. (1 Wall.) 531, 577, 17 L. Ed. 650, the United States Supreme Court, under circumstances quite similar to those at bar, said:

"We concur, therefore, in the decision of the Circuit Court, that the machine of Boyden is not an infringement of the *invention* of Wells; and if it be an infringement of the reissued patent (containing the broad claim), that patent is void." (Italics and parenthetical expression ours.)

■ In the case at bar it seems to us that if appellant was granted a patent and should

sue an infringer who used a different means to simultaneously adjust shears while in operation, the claims of appellant at bar could be given only the scope indicated by the drawings and specification, which cover his invention, or else the claims must be held void and, therefore, not infringed. Since this is the necessary result which would follow from the allowance of such claims, it seems to us proper for the Patent Office to reject such claims as being too broad, in which instance opportunity would no doubt be afforded for the inventor, if he really had invented something, to so claim his invention as to entitle him to all the protection necessary, and at the same time to avoid obstructing the development of the art by preventing others, through fear of litigation, attempting to invent other means for performing the same desirable functions.

In Patent Office Practice by Archie R. McCrady, § 117, we find the following:

"Sec. 117. 'Single Means' Claims. A claim in the form of a single means clause is bad, because the recital of a single means for performing the desired function amounts to claiming all possible ways of doing that thing, so that instead of defining an invention, the applicant is obstructing the development of the art by preventing the doing of that particular thing, whether it is done by the invention disclosed or by some entirely independent invention. Ex parte Bullock, 127 O. G. 1580, 1907 C. D. 93."

In Ex parte Bullock, cited supra, the following claim was under consideration:

"9. In a device of the class described, means for transferring clothes-carrying rods from one position and depositing them on a suitable support, substantially as shown and described."

Commissioner Allen said concerning this claim:

"The claim is clearly indefinite and functional. No structure by which the function stated is accomplished is set forth in the claim. The claim is not for a combination of which the 'means' for the purpose mentioned is an element, but is merely for means as an element and covers all possible means for accomplishing a certain function regardless of structure. Ex parte Kotler, 1901 C. D. 62, 95 O. G. 2684."

Also in the same authority, section 118, we find the following pertinent language:

"Sec. 118. Undue Breadth. Again, the claim must not be broader than the invention, because no matter how broad the claim is actually worded, the court will give the claim an interpretation only commensurate with the actual invention and its equivalents. Hence there are many cases in which the court has found that the claim reads literally on the defendant's device, and is valid, and yet is not infringed, because the claim is couched in language that is broader than the invention; or the court has had to limit it by interpretation in order to sustain it and make it commensurate with the scope or the invention."

In Anders v. Gilliland, 19 O. G. 177, 1881 C. D. 1, the Commissioner said:

"If the scope of the claim can be no greater than above mentioned under any circumstances whatever words are used, language having a broader signification in the claim, or such that a literal construction thereof would give a claim of wider range, is manifestly in contravention of the spirit as well as the terms of the statute, * * * that he shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery."

Technically it may be argued that the claims at bar as well as the claim considered by Commissioner Allen, supra, referring to the "means," are not "functional" as that term is ordinarily used. A functional claim, as we understand it, is not one which calls for a means for performing a function, but which claims a function. The difficulty with the claims at bar is that they claim a means of performing a function in such broad and indefinite language as to really amount to claiming no means at all. The weight of authority seems to hold that a claim couched in such broad language as are the claims at bar, and confined to a single "means" for performing a function, is, in infringement suits, to be regarded as void; that is to say, since they disclose no particular means of performing the function, they are to be regarded as claiming only a function. See Tyden v. Ohio Table Co. et al. (C. C. A.) 152 F. 183; Davis Sewing Machine Co. v. New Departure Mfg. Co. (C. C. A.) 217 F. 775, 782; In re Gardner, 32 App. D. C. 249, 140 O. G. 258, 1909 C. D. 306.

It follows that the Board of Appeals did not err in its rejection of appellant's claim as presented, and its decision is affirmed.

Affirmed.