50 CCPA

**Application of LePAGE'S INCORPORATED (a Subsidiary of the Papercraft Corporation, and Assignee of Johnson & Johnson).**

**Patent Appeal Nos. 6855, 6856.**

United States Court of Customs and Patent Appeals.

Jan. 16, 1963.

Francis C. Browne, Washington, D. C. (William E. Schuyler, Jr., and Andrew B. Beveridge, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, C. J., and RICH, MARTIN, and SMITH, Associate Judges, and Associate Judge JOSEPH R. JACKSON, Retired.

MARTIN, Judge.

This consolidated appeal is from the decision of the Trademark Trial and Appeal Board affirming the refusal of the examiner to register on the Principal Register a mark [1] consisting of a dispensing container having a generally cylindrical centrally constricted body and cap and having a truncated cylindrical tip, and a mark [2] which has the same overall configuration as the one just discussed but with some slight variations.

It is unnecessary to delineate in more detail the issues presented here because we believe that the appeals should be

---

1. Application Serial No. 40,299 (PA 6855) filed October 16, 1957 for liquid glue, mucilage and adhesive cements. Use in commerce is alleged since 1926.

2. Application Serial No. 62,303 (PA 6856), filed November 12, 1958, for liquid glue, mucilage and adhesive cements. Use in commerce is alleged since 1926.

dismissed for the reason that appellant has failed to fulfill the minimum requirements of the statutes [3] for perfecting appeals in this court.

Appellant's notice of appeal reads as follows:

"NOTICE OF APPEAL TO UNITED STATES COURT OF CUSTOMS AND PATENT APPEALS, JUNE 21, 1961

"Sirs:

"Pursuant to Section 2(f) [4] of the Trademark Act of 1946, as amended, applicant hereby appeals to the United States Court of Customs and Patent Appeals from the decisions of the Trademark Trial and Appeal Board dated April 3, 1961 and May 22, 1961, refusing registration of the mark shown in applications Serial Nos. 40,299 and 62,303, filed October 16, 1957 and November 12, 1958, respectively, on the Principal Register under the Trademark Act of 1946."

As is apparent, appellant failed to indicate any reasons of appeal whatsoever.

It is our opinion that 35 U.S.C. § 142, in stating:

" * * * the appellant * * * shall file * * * *his reasons of appeal, specifically set forth in writing* * * * *." [Emphasis ours.]

contemplates more in a notice of appeal than a mere statement of applicant's appeal from the decision of the Trademark Trial and Appeal Board refusing registration of the mark. This position is reenforced by the wording of section 143, wherein it states:

" * * * in an ex parte case the Commissioner shall furnish the court with the grounds of the decision of the Patent Office, in writing, *touching all the points involved by the reasons of appeal.*" [Emphasis ours.]

and in section 144, wherein it states:

"The United States Court of Customs and Patent Appeals, on petition, shall hear and determine such appeal on the evidence produced before the Patent Office, and *the decision shall be confined to the points set forth in the reasons of appeal.* * * *." [Emphasis ours.]

It seems to us that if all that was necessary to be done to perfect an appeal was that which was done here, there exist many superfluous words in sections 142, 143 and 144.

The solicitor raised this question here for the first time in his brief on appeal. However, since this is a jurisdictional matter it is proper to raise it at any time. In re Wesselman, 127 F.2d 311, 29 CCPA 988. For these reasons we *dismiss* these appeals.[5]

Dismissed.

WORLEY, Chief Judge (concurring).

I agree that appellant has failed to comply with the provisions of Section 142,[1] but am unable to agree with the

---

3. 15 U.S.C.A. § 1071; 35 U.S.C. § 142; 35 U.S.C. § 143; 35 U.S.C. § 144. 15 U.S.C. § 1071 has been amended by Public Law 87–772 so that it now includes specifically the requirements of 35 U.S.C. §§ 142, 143, 144.

4. We assume that appellant intended to write section 21 of the Trade-Mark Act of 1946 instead of 2(f) since section 21 is written in its Consolidated Petition on appeal.

5. Since we have found that we do not have jurisdiction of this matter we will not rule upon the request of appellant to file certain papers nor the motion of the Commissioner of Patents to change the title of the appeals.

1. "§ 142. Notice of appeal
"When an appeal is taken to the United States Court of Customs and Patent Appeals, the appellant shall give notice thereof to the Commissioner, and shall file in the Patent Office his reasons of appeal, specifically set forth in writing, within such time after the date of the decision appealed from, not less than sixty days, as the Commissioner appoints."

criticism levelled at that section by the concurring opinions.

I am certain Congress did not intend Section 142 to be, and that it has not become "a trap for the inexperienced, the unwary, or the careless," nor do I regard it as "an anachronistic procedural hangover" from the 19th century. I am equally certain the facts here, as well as the history of that section, do not fairly support such evaluation.

Section 142 is but one of the sections of the statute [2] designed for, and so essential to, the orderly and expeditious discharge of the business of this court.

If an appellant is of the bona fide opinion that the board erred, surely it should present no problem for him to "specifically set forth in writing" his reasons within the sixty day period allowed by law. After all, appellant must eventually make his position known.

I am sympathetic with those who preclude a decision on the merits of an appeal by failing to comply with the statute governing reasons of appeal. I would be equally sympathetic with one who failed to file his appeal within the statutory period, but cannot see where the law is at fault in either case. Even if, in isolated instances such as here, a hardship might ostensibly result, that fact should be balanced with the need for procedures which promote the orderly operation of both the Patent Office and this court; procedures which, I might add, apparently have heretofore offered no obstacles to the overwhelming majority of those coming before this court.

These requirements have been in the law for many years. Inasmuch as Congress has consistently expressed its approval by reenacting them,[3] I would hesitate to suggest they be repealed or substantially modified in the absence of most compelling reasons.

RICH, Judge (concurring).

There is no room for doubt that one appealing to this court from the Patent Office in a patent or trademark case is required by law to accompany the notice of appeal which is filed with the Commissioner of Patents, or include in it, his "reasons of appeal, specifically set forth in writing." 35 U.S.C. § 142. I have long been out of sympathy with this requirement. It lacks even the merit of being a pleasant and harmless ritual of the law. It has the great vice of being but a trap for the inexperienced, the unwary, or the careless. From time to time, as in the instant case, it results in the dismissal of a case with no consideration of its merits; and this after the printing of records, the writing and printing of briefs, oral argument, and study on the part of five judges and their assistants all at great expense of time, money and energy. We have more im-

2. "§ 143. Proceedings on appeal
"The United States Court of Customs and Patent Appeals shall, before hearing such appeal, give notice of the time and place of the hearing to the Commissioner and the parties thereto. The Commissioner shall transmit to the court certified copies of all the necessary original papers and evidence in the case specified by the appellant and any additional papers and evidence specified by the appellee and *in an ex parte case the Commissioner shall furnish the court with the grounds of the decision of the Patent Office, in writing, touching all the points involved by the reasons of appeal.*"
"§ 144. Decision on appeal
"The United States Court of Customs and Patent Appeals, on petition, shall hear and determine such appeal on the evidence produced before the Patent Office, *and the decision shall be confined to the points set forth in the reasons of appeal.* Upon its determination the court shall return to the Commissioner a certificate of its proceedings and decision, which shall be entered of record in the Patent Office and govern the further proceedings in the case." (Italics supplied).

3. As late as the last session, Congress expressly reenacted the requirements of Sections 142, 143 and 144 in Public Law 87-772 (76 Stat. 769), effective August 9, 1962, in amending the Trade-Mark Act.

portant work to do than the springing of such traps and we certainly have uses for our limited time and energies of greater social value.

Note should be taken, for the purpose of this discussion, of certain details of the statutory requirement. "Reasons" are required, the plural implying that there should be more than one.[1] They must be "specifically" set forth, which implies, at least, that a generalization is not in compliance with the law. And they must be written down and filed.

As the court's opinion points out, there is not just one section of the statute bearing on reasons of appeal, but three. Section 142 requires that they be filed. Section 143 requires the Commissioner, in ex parte cases, to supply this court with the grounds of the Patent Office decision "touching all the points involved by the reasons of appeal." Section 144 says that this court's decision "shall be confined to the points set forth in the reasons of appeal." This triple emphasis would seem to imply that there is something important about reasons of appeal. In the light of today's actual procedures under other sections of the statute and related rules, however, reasons of appeal are a ridiculous anachronism.

As a court charged with the solemn duty of carrying out the law as it is written by the Congress, we cannot ignore completely express provisions of statutes simply because they have ceased to be grounded in reason, tempted though we may be to do so. Temptation has never, so far as I am aware, led the court into holding, *in the face of a challenge,* that a notice with *no* reasons of appeal in it is a sufficient compliance with the statute to permit of a decision by us on the merits. Even so, I concur only in the result in this case because, for one thing, I am not at all convinced that the absence of reasons is a "jurisdictional" defect, depriving us of the

*power* to act if we choose to do so. I am aware that several opinions which I have carefully read have said that it is. But I raise the question whether, *if there is no challenge* and the court chooses to proceed to a decision on the merits, it may not do so on the theory that reasons are for the benefit of the appellee, and possibly of the court, and that if neither raises any question, the defect in, or absence of, the reasons is waived. After all, the reasons of appeal are merely a procedural adjunct to the notice of appeal which is the paper, when followed by a petition of appeal, by which the court's jurisdiction is invoked. In all such cases a notice has been duly filed. Many cases can be cited wherein the court certainly has proceeded with a consideration of points to which no specific reason has been directed, even in the face of challenge, in direct refutation of the basis on which other opinions have expressed the view that the absence of specific reasons deprives us of jurisdiction to consider points not raised. If absence of a specific reason is truly "jurisdictional," the court surely has rendered a multitude of "extrajudicial" decisions.

I concur in the result solely for the reason that I believe respect for law requires that we withhold sanction from total disregard of statutory requirements; not that we, as a court, could not do otherwise, by applying a waiver theory, but I think we *should* not.

### The Statutes Should be Changed

My main purpose in writing this opinion is to try to start some wheels turning to modernize the statutes above referred to, to bring them into conformity with existing procedures in the Patent Office and in this court so that they make sense; to conform procedure in taking appeals to this court as nearly as may be to that laid down in the Federal Rules

1. I am aware that 1 U.S.C. § 1 states as a rule of construction that "words importing the plural number" may "include the singular," but I think the im- plication remains. The language was adopted long before there was such a statutory rule of construction.

of Civil Procedure so that lawyers need not learn two different procedures within the same Federal court system; and to put an end to the persistent raising by the Patent Office in ex parte appeals of time-wasting procedural technicalities, of no assistance to anyone, which merely add to the burdens on us and on the bar in deciding controversies on their merits. The bar might well give thought to the desirability of legislation to this end.

### What Goes on Here

The overall picture of what is done in this court with respect to filing reasons of appeal is not, I think, one which is visible from the outside. Our opinions do not reflect it since they never mention the subject unless the adequacy of the reasons is attacked. There is no uniformity of practice. In the instant case someone, probably following the practice in appealing from a District Court to a Court of Appeals under F.R. C.P. 73, 75, filed a notice with no reasons. At the other extreme, by way of example, in a recent appeal in a routine trademark opposition, Robert Hall Clothes, Inc. v. Mary Lindsay Studds, 286 F.2d 615, 48 CCPA 831, the notice contained 55 reasons of appeal covering 6 pages of the printed record. Such voluminous reasons are, moreover, frequently reprinted in briefs under the mistaken belief that pointing out such an enormous volume of supposed error in Patent Office decisions helps the party's cause. For reasons explained later, unless reasons are attacked as inadequate —and such voluminous reasons rarely are—no judge is likely to read them. The number of reasons filed fluctuates, from case to case, between the extremes above mentioned.

One common characteristic of reasons of appeal is that they say everything twice, or even three times, even where there is nothing to say except that the appellant thinks the decision of the Patent Office is wrong, thus:

"1.	The board erred in affirming the examiner's rejection of claims 2, 4, and 6.

"2.	The board erred in not reversing the examiner's rejection of claims 2, 4, and 6.

"3.	The board erred in rejecting the claims on the references.

"4.	The board erred in not allowing the rejected claims over the references.

"5.	The board erred in sustaining the examiner's several grounds of rejection.

"6.	The board erred in not reversing the examiner's grounds of rejection."

I did not make those reasons up. I have merely left a few superfluous words out of the actual reasons filed in In re Adrian, 94 F.2d 808, 25 CCPA 921. It seems a shame to waste money on a legal education if this is the result. While the attorney certainly managed to meet the technicality of filing a plurality of reasons, two would have done that. All these 6 reasons say is that the board was in error in sustaining the rejection of the examiner. The court's opinion does not mention reasons of appeal but they were of the general character above stated. The court nevertheless went into all grounds of rejection including one by the examiner which was not discussed by the board, reversing the rejection as to all claims but one. That was in 1938.

Another common characteristic of reasons of appeal is that they are drafted not on the basis of the *decision* appealed from but on the basis of what the *board* said in its *opinion*. The statute (35 U.S. C. § 141) says "[a]n applicant dissatisfied with the decision of the Board of Appeals may appeal." I am aware that it is the custom to call the board's opinions "decisions," but that is not what they are. The decision is the act of the board in saying whether each ground of rejection of the examiner which is appealed to it is right or wrong. The opinion is a discussion, an exposition, a rationalization or justification of the decision or decisions made. It is apparent to me from having perused a number of the more voluminous reasons of appeal

that their undue multiplicity results from going through an opinion with a fine-toothed comb and asserting error with respect to every statement made which conceivably could be adverse to the appellant's cause, and then doubling them so far as possible by repeating them in negative form. As I said, unless challenged, I, at least, do not read such reasons. I do not believe my colleagues often do either. Why should we? We have to read the board's opinion and the appellant's brief wherein he sets forth his reasons for disagreeing with the board in a much more intelligible fashion. The brief, moreover, is the result of more critical analysis of the case and many points mentioned in such reasons may turn out to be unimportant. The reasons, on the other hand, must be prepared in a hurry (Rules 304 and 302, set the time for filing reasons at 60 days from the date of the board's decision) and, under some of the more frightening opinions of this court, must be designed to cover every possible contingency at a time when it has not been decided how the case is to be argued. It is the kind of a job that would be turned over to a junior associate in a law office, and this may give rise to trouble where outmoded technicalities inherited from a century ago must be complied with.

Probably the case which threw the biggest scare into the bar about reasons of appeal is In re Boyce, 144 F.2d 896, 32 CCPA 718 (1944). The court there dealt with a situation in which the examiner rejected on several references and the board, on appeal, discussed only one of them and affirmed. On appeal to this court, the applicant mentioned specifically in his reasons only the reference discussed by the board but also filed six other reasons of the generalized type. The court, applying the rule of In re Wagenhorst, 64 F.2d 780, 20 CCPA 991, that an affirmance by the board has the legal effect of a rejection on all grounds and references relied on by the examiner not expressly reversed by the board, said that even should it be of the opinion that the reference discussed by

the board was not applicable, it *could* not reverse the board on the reasons of appeal before it since they did not assign error as to the other references used by the examiner. The case was not considered on its merits and the board was affirmed. The court also implied that the application of references had to be challenged by reasons of appeal "to require or *admit* of their consideration by us." (My emphasis.)

Most lawyers will remember that as a result of this decision the Board of Appeals adopted a practice of ending its opinions with the following paragraph:

> "In the event of appeal attention is directed to In re Boyce, 32 C.C. P.A. 718, 144 F.2d 896, 1944 C.D. 609, 568 O.G. 568, 63 U.S.P.Q. 80, in regard to including specifically in the appeal notice *all* grounds of rejection relied upon by the examiner not expressly overruled by the Board."

If it be not remembered, it is readily discoverable. See, for example, Amdur, Patent Office Rules and Practice, §§ 301–301f; McCrady, Patent Office Practice (4th Ed.), Sec. 268. Jacobs, Patent and Trademark Practice Forms (1951), Chap. VII, p. 175 states:

> "It should be particularly noted that the reasons for appeal must be fully set forth and must cover all the points on which the appellant wishes a review and decision by the higher tribunal. This is especially important in connection with appeals to the Court of Customs & [sic] Patent Appeals which rigidly enforces the rule requiring reasons for appeal to be set forth in full detail. No decision can be had on a point not so specifically included."

While this is sound advice and in accord with the board's stock In re Boyce warning, which continued in use until 1952 (see Ex parte Goldsmith, 94 U.S.P.Q. 403 at 405), the fact is the court has not "rigidly enforced" the supposed rule. In the very same volume with In re Boyce,

in a case decided six months later, In re Kopplin, 146 F.2d 1014, 32 CCPA 848, the court said:

"While it is quite true that there is no specific mention of the Dodge, Fowler and Novotny patents in the reasons of appeal, appellant assigned as his first reason of appeal that 'The Board of Appeals erred in rejecting said claims and each of them for the reasons and *on the references cited against them, respectively.'* [Italics ours.] That reason is the equivalent of setting out in separate reasons of appeal the Dodge, Fowler and Novotny patents. The only reason for rejecting the claims was that they were unpatentable over the prior art. Therefore we are of opinion that that reason of appeal is sufficient.

"Appellant has clearly advised us and the Patent Office of the issue, and it is not necessary for us to search the record in order to discover the basis of the appeal. The Solicitor in his brief discussed and applied all of the references. Therefore we will consider all of them." [The above "Italics ours" appears in the opinion.]

Citing that case with approval, in our latest decision on this question, In re Howell, 298 F.2d 949, 49 CCPA ——, we accepted, over the objections of the Patent Office, reasons stating generally "that the Board of Appeals erred (1) in rejecting claims 22, 23 and 24 on the Sollmann, Benzel, Cowen and Connell patents and (2) in not allowing claims 22, 23 and 24."

In the case of In re Wesselman, 127 F. 2d 311, 29 CCPA 988, cited in the court's opinion in the instant case for the proposition that want of a sufficient reason is a jurisdictional matter, I find one of the most amazing attempts to find lack of jurisdiction in a supposed distinction between Tweedledum and Tweedledee.[2] The court acknowledged that in the Wagenhorst case, supra, "a majority [it was 4:1] of this court held that this reason of appeal complied with the statute":

"The Board of Appeals erred in affirming the reason of the primary examiner finally rejecting claims 1, 4, 6, 7, 8, and 10 of the above-entitled application."

The court then proceeded to hold that it had no authority under its statutory jurisdiction to review the decision appealed from because the only reason of appeal read:

"1. The Board of Appeals erred in affirming the primary examiner's final rejection of claims 16 and 17 as amended to date."

It may be significant that the lone dissenter in the Wagenhorst case, Judge Lenroot, was the author of this Wesselman opinion. There seems to be no other logical explanation. Forgotten were the following words of the late Presiding Judge Graham in the Wagenhorst majority opinion:

"This court is not disposed to apply, in these cases, the rigid and inflexible rules as to assignments of error sometimes applied by the courts in other proceedings. The statute should be liberally and reasonably construed, and its purpose to give the parties appealing to this court from Patent Office decisions a speedy and effective revision thereof should not be defeated by a highly technical construction of the written 'reasons of appeal.' If the court and the Patent Office are advised, by these written reasons, of the questions at issue, that is sufficient to enable the court to 'revise the decision appealed from in a summary way.' Section 4914, Rev.St. [now 35 U.S.C. 144, with minor language changes.]

---

2. Through the Looking-Glass, Lewis Carroll, Chap. IV. " * * * Alice knew which was which in a moment, because one of them had 'DUM' embroidered on his collar, and the other 'DEE.' 'I suppose they've each got "TWEEDLE" round at the back of the collar,' she said to herself."

\* \* \* \*. \* \*

"\* \* \* *There seems to be no real necessity, in order to raise the question here, that each ground of refusal given by the Examiner and affirmed by the Board, should be set out, seriatim.* [My emphasis.]

That was 30 years ago. It still seems that there is no real necessity for setting out grounds of refusal seriatim. Why then do we have this requirement of the statutes?

### Legislative History of Reasons of Appeal

One searching for an explanation of the provisions of the sections of the statute involved, 35 U.S.C. §§ 142, 143, 144, finds more history than legislation. To get matters in proper perspective, I will begin with the Patent Act of 1836, 5 Stat. 117. After 46 years of somewhat chaotic experience with the earlier patent statutes, this was the first general statutory reorganization. It repealed all prior statutes and created the office of Commissioner of Patents to head the Patent Office which had come into being in 1802 as an adjunct of the Department of State. The first Commissioner was Henry L. Ellsworth.

The statute expressly provided for the entire Patent Office staff. It consisted of the Commissioner, a Chief Clerk, an examining clerk, two other clerks one of whom was to be a draftsman, a machinist, and a messenger. Section 7 of the act provided for the examination of applications for patents and what we would now call office actions and amendments. It also provided for appeals from the refusal of the Commissioner to issue patents to a special board expressly appointed by the Secretary of State to hear each appeal, as follows:

"Sec. 7. \* \* \* And if the specification and claim shall not have been so modified as, in the opinion of the Commissioner, shall entitle the applicant to a patent, he may, on appeal, and upon request in writing, have the decision of a board of examiners, to be composed of three disinterested persons, who shall be appointed for that purpose by the Secretary of State, one of whom at least, to be selected, if practicable and convenient, for his knowledge and skill in the particular art, manufacture, or branch of science to which the alleged invention appertains; who shall be under oath or affirmation for the faithful and impartial performance of the duty imposed upon them by said appointment. Said board shall be furnished with a certificate in writing, of the opinion and decision of the Commissioner, stating the particular grounds of his objection, and the part or parts of the invention which he considers as not entitled to be patented. And the said board shall give reasonable notice to the applicant, as well as to the Commissioner, of the time and place of their meeting, that they may have an opportunity of furnishing them with such facts and evidence as they may deem necessary to a just decision; and it shall be the duty of the Commissioner to furnish to the board of examiners such information as he may possess relative to the matter under their consideration. And on an examination and consideration of the matter by such board, it shall be in their power, or of a majority of them, to reverse the decision of the Commissioner, either in whole or in part, and their opinion being certified to the Commissioner, he shall be governed thereby in the further proceedings to be had on such application: *Provided, however,* That before a board shall be instituted in any such case, the applicant shall pay to the credit of the Treasury, as provided in the ninth section of this act, the sum of twenty-five dollars, and each of said persons so appointed shall be entitled to receive for his services in each case a sum not exceeding ten dollars, to be determined and paid by the Commissioner out of any moneys in his hands, which shall be

in full compensation to the persons who may be so appointed, for their examination and certificate as aforesaid."

Commissioner Ellsworth, in his annual report of January 14, 1839, for the year 1838 reported that 520 patents had been issued, that receipts were $38,423.54 and expenses $19,180.18 (a profitable enterprise) and that he had an urgent need for two assistant examiners. I mention these facts to indicate the kind of a world it was then. Not only was the Commissioner running the office with two examiners but the Committee on Patents in the House was imposing on him the duties now carried out by the Department of Agriculture and he was also recovering from the December 15, 1836 fire which completely destroyed the Patent Office. In spite of all this he found the energy to make constructive suggestions about appeals as follows:

" * * * Wise and beneficial as the operation of the law is, generally, there are one or two particulars in which experience suggests the propriety, if not necessity, of some modification.

"The board of examiners, occasionally appointed in cases of appeals, is attended with inconveniences, not foreseen, which ought, if possible, to be corrected.

"This tribunal was provided, it is presumed, to relieve the apprehensions some might have entertained, from the power necessarily conferred, and the duty imposed upon the Commissioner, to withhold a patent in every case where the claim is destitute of merit or originality. Contrary, perhaps, to the intention of the framers of the law, it has been construed to open the whole matter, on appeal, to the reception of additional evidence, leading to much delay and expensive litigation before the board.

"The compensation provided for this board of examiners appears to have been predicated upon the idea of a brief and summary duty, and is so small that few of requisite qualifications are found who will consent to undertake it.

"Hence much delay arises in constituting a board, whenever an appeal is made; and different individuals being appointed in different cases, their rules and course of proceeding are various and unsettled. The examination into the originality of an invention, or supposed discovery, preliminary to the issuing of a patent, and the settling of interfering claims to patents, must necessarily be, in some measure, summary. But the decision between contesting parties is, in all cases, subject to judicial corrections; and a final adjudication is, by law, as it ought to be, referred to the courts.

"It is submitted whether the Commissioner could not be authorized to prescribe, with advantage, the necessary rules for the taking of testimony to be used in the hearing before him; and to make suitable regulations for a full and fair hearing of all parties interested.

"As a remedy for the evils alluded to, (of which parties complain,) *I beg leave to suggest, as a substitute for the board of examiners, the expediency of allowing an appeal to the chief justice of this District,* giving him power to examine and determine the matter summarily at chambers, or otherwise, on the evidence had before the Commissioner. From the experience had, thus far, it may be presumed that the judge would have but few cases to examine, and that those would not materially interfere with his other judicial duties. A reasonable compensation for such duty may be made from the patent fund. Parties from a distance could then have their cases settled, without a great delay or trouble to which they are now subjected." [Emphasis added.]

It may sound incredible, but this suggestion made January 14, 1839, resulted

in the Patent Act of March 3, 1839, 5 Stat. 353. It gave Commissioner Ellsworth his two assistant examiners and, in section 11, provided for appeals to the Chief Justice of the District Court of the United States for the District of Columbia. I quote the section in full because here our "reasons of appeal" originated and by comparison with the present statute it will be seen that in 123 years the provisions as to those "reasons" have undergone no substantial change, though the practice has. (Corresponding later statutes are marginally noted.)

"Sec. 11. *And be it further enacted,* That in all cases where an appeal is now allowed by law from the decision of the Commissioner of Patents to a board of examiners provided for in the seventh section of the act to which this is additional [the 1836 Act], the party, instead thereof, shall have a right to appeal to the chief justice of the district court of the United States for the District of Columbia, *by giving notice thereof to the Commissioner, and filing in the Patent Office, within such time as the Commissioner shall appoint, his reasons of appeal, specifically set forth in writing,* and also paying into the Patent Office, to the credit of the patent fund, the sum of twenty-five dollars. *And it shall be the duty of said chief justice, on petition, to hear and determine all such appeals, and to revise such decisions in a summary way, on the evidence produced before the Commissioner, at such early and convenient time as he may appoint,* first notifying the Commissioner of the time and place of hearing, whose duty it shall be to give notice thereof to all parties who appear to be interested therein, in such manner as said judge shall prescribe. *The Commissioner shall also lay before the said judge all the original papers and evidence in the case, together with the grounds of his decision, fully set forth in writing, touching all the points involved by the reasons of appeal, to which the revision shall be confined.* And at the request of any party interested, or at the desire of the judge, the Commissioner and the examiners in the Patent Office, may be examined under oath, in explanation of the principles of the machine or other thing for which a patent, in such case, is prayed for. And it shall be the duty of said judge, after a hearing of any such case, to return all the papers to the Commissioner, with a certificate of his proceedings and decision, which shall be entered of record in the Patent Office; and such decision, so certified, shall govern the further proceedings of the Commissioner in such case; *Provided, however,* That no opinion or decision of the judge in any such case, shall preclude any person interested in favor or against the validity of any patent which has been, or may hereafter, be granted, from the right to contest the same in any judicial court, in any action in which its validity may come in question." [Emphasis added.]

Cf. § 142 (R.S. 4912)

Cf. § 144 (R.S. 4914)

Cf. § 143 (R.S. 4913)

R.S. 4914; omitted in § 144 as superfluous

Section 13 of the act provided for the payment to the chief justice, out of the patent fund (the profits from the Patent Office held in the Treasury) "in consideration of the duties herein imposed, the sum of one hundred dollars." In 1852, 10 Stat. 75 the law was changed to provide thta the Commissioner should pay the $25 appeal fee to the judge.

In 1852 appeals were allowed to be made to either of the assistant judges of the then Circuit Court of the District of Columbia. In 1863, 12 Stat. 762 the Supreme Court of the District of Columbia was established and the justices thereof were clothed with the same powers theretofore exercised by the judges of the Circuit Court. Section 48 of the Consolidated Patent Act of 1870 (R.S. 4911) provided for appeal to the Supreme Court of the District of Columbia, "sitting en banc." In 1893, 27 Stat. 434 The Court of Appeals of the District of Columbia

was established and the appeals transferred to it, where they remained until the creation of the Court of Customs and Patent Appeals in 1929, 45 Stat. 1475 and transfer of Patent Office appeals to it.

It will be observed from comparison that the emphasized portions of section 11 of the 1839 act, insofar as reasons of appeal and the related procedure are concerned, contain the substance of sections 4912,[3] 4913,[4] and 4914 [5] of the Revised Statutes. (There is a slight rearrangement in that the confining of the revision to the reasons of appeal appears in R.S. 4913 rather than in the passage of section 11 which became R.S. 4914.)[6]

The 1952 act was (with respect to these three sections of the Revised Statutes which became sections 142, 143 and 144 in the 1952 act) primarily a codification with trivial changes indicated by the revision notes. None of the changes affect the reasons of appeal requirements which

---

3. "Sec. 4912. When an appeal is taken to the supreme court of the District of Columbia, the appellant shall give notice thereof to the Commissioner, and file in the Patent-Office, within such time as the Commissioner shall appoint, his reasons of appeal, specifically set forth in writing." [Approved June 22, 1874. The Act of March 2, 1927, c. 273, § 9, 44 Stat. 1336, substituted "Court of Appeals of the District of Columbia" for "Supreme Court of the District of Columbia." The Act of March 2, 1929, c. 488, § 2(b), 45 Stat. 1476, amended this section further by inserting in place of "Court of Appeals of the District of Columbia," "United States Court of Customs and Patent Appeals."]

4. "Sec. 4913. The court shall, before hearing such appeal, give notice to the Commissioner of the time and place of the hearing, and in receiving such notice the Commissioner shall give notice of such time and place in such manner as the court may prescribe, to all parties who appear to be interested therein. The party appearing shall lay before the court certified copies of all the original papers and evidence in the case, and the Commissioner shall furnish the court with the grounds of his decision, fully set forth in writing, touching all the points involved by the reasons of appeal. And at the request of any party inter-

ested, or of the court, the Commissioner and the examiners may be examined under oath, in explanation of the principles of the thing for which a patent is demanded. [Approved June 22, 1874. The Act of March 2, 1927, c. 273, § 10, 44 Stat. 1336 amended this section by deleting the last sentence.]"

5. "Sec. 4914. The court, on petition, shall hear and determine such appeal, and revise the decision appealed from in a summary way, on the evidence produced before the Commissioner, at such early and convenient time as the court may appoint; and the revisions shall be confined to the points set forth in the reasons of appeal. After hearing the case the court shall return to the Commissioner a certificate of its proceedings and decision, which shall be entered of record in the Patent-Office, and shall govern the further proceedings in the case. But no opinion or decision of the court in any such case shall preclude any person interested from the right to contest the validity of such patent in any court wherein the same may be called in question. [Approved June 22, 1874.]"

6. For more historical details on the evolution of appeals see P. J. Federico, "Evolution of Patent Office Appeals," 22 J.P.O.S. 838 and 920 (1940).

remain, therefore, as they were written in 1839.

### Early Practice

I now wish to direct attention to the nature of the proceeding in 1839. The Commissioner was almost operating the Patent Office and the examination system in person and a decision to refuse a patent was practically his personal decision. The appellate review of that decision was entirely outside the Patent Office. (No board of appeals was created until 1861, 12 Stat. 246.) In taking an appeal to a judge of the district court something was required to inform the judge of the issues. Clearly this was the function of the "reasons of appeal" which were in the nature of a pleading, corresponding to a complaint. In response to this pleading the Commissioner was directed by the statute to do two things: (1) lay before the judge the papers and evidence in the case, and (2) state in writing the grounds of his decision "touching all the points involved by the reason of appeal," the latter clearly corresponding to an answer. The duty of the judge, set forth in the statute, was (1) "to revise such [Commissioner's] decisions in a summary way, on the evidence produced before the Commissioner" and to confine "the revision" to "the points involved by the reasons of appeal," that is to say points raised by the pleadings. This was sensible court procedure. It would also appear to have been carefully devised to meet the objection of Commissioner Ellsworth to the previous appeal to specially designated boards which operated without rules and seem to have had a predeliction to "open the whole matter, on appeal, to the reception of additional evidence, leading to much delay and expensive litigation."

In an early day Judge Cranch, the first judge to receive these appeals, had a lesson in the realities of this *appellate* procedure from which he learned that it was not his duty to substitute himself for the Commissioner of Patents in finding reasons for refusing patents but to *review* the grounds of refusal previously stated by the Commissioner. In Arnold v. Bishop and Akin, Fed.Cas. No. 553, 1 Fed.Cas. 1168, decided Nov. 25, 1841, it appears that the issue raised by the reasons of appeal was the propriety of a rejection based on the contention Arnold was not the sole inventor of a machine. In a previous opinion of October 29, 1841, Judge Cranch had held that Arnold had not supported his claim to sole inventorship. Judge Cranch, however, in the same opinion then said that even if Arnold had, he had lost the right to a patent by suffering the machine to be in use for more than two years before applying for a patent. No such rejection appears to have been made by the Commissioner. On a rehearing and in a new opinion the judge adhered to his view on inventorship, said that by "use" he meant "public use" and then said that on reflection "I doubt whether I can decide upon any other matter than that which arises upon the *reasons* of appeal." He emphasized that his duty under the law was to *revise* decisions of the Commissioner and that the revision was to be confined to the points *involved in* the reasons of appeal.

This early decision on reasons of appeal is an important one as it has influenced this court in other cases of an entirely different kind. It is important to note that what Judge Cranch was refusing to do was to pass on a ground for refusing a patent which *he* perceived in the facts of the case but which was *not* asserted by the Commissioner. His concluding words show this:

> "If, therefore, after the judge shall have decided *in favor of the applicant* upon the points involved in his reasons of appeal, other sufficient reasons remain for *refusing* the claim for a patent, untouched by the decision of the judge, it would seem that the commissioner might properly still reject it. Whether such new rejection would be subject to appeal, is a question which may be left * * * to future decisions * * *. For these reasons I doubt

very much whether it was competent for me to decide in this case that Mr. Arnold had *lost* his right to a patent by suffering the machine to be in public use for more than two years before his application for a patent. So much, therefore, of my former opinion in this case may be considered as *extra-judicial and as withdrawn.*" [Emphasis added.]

History repeats itself. This court, in the second year of its jurisdiction over patent appeals, fell into the same error. In In re Tucker et al., 46 F.2d 214, 18 CCPA 875 (1931) the Patent Office rejection of claims on a reference was reversed but the court said "In our judgment the claims are too broad, and for that reason should have been rejected." It therefore affirmed. As the court later stated in In re Sebald, 143 F.2d 366, 31 CCPA 1148, this affirmance of a rejection "upon grounds other than those applied by the Patent Office tribunals attracted great interest among members of the patent bar. Rehearing was granted, and the appellants, and another [American Patent Law Association] as *amicus curiae,* as well as the Solicitor for the Patent Office, appeared and argued the question involved at great length." As the Sebald opinion tells the story:

"Upon due consideration, and especially in view of the decision in Arnold v. Bishop et al., 1 Fed.Cas. 1168, No. 553, and other similar later decisions to the same effect, we followed the holding of Chief Judge Cranch, where he had granted a rehearing, considered the same question which we then were considering, and came to the conclusion that his former decision was 'extrajudicial' and that it should be withdrawn. Our holding in In re Tucker and Reeves, 19 C.C.P.A., Patents, 810, 54 F.2d 815, 12 USPQ 131, has become the settled law of this court, and we have seen no disposition on the part of Congress to broaden our jurisdiction in this respect."

"In this respect." Those words might well be pondered! It is not likely that in the respect actually involved either in Arnold v. Bishop or in Tucker and Reeves—that is, the assumption by a reviewing court of the authority to reject applications on entirely new grounds originated by the court—there ever will be a disposition by Congress to broaden the jurisdiction. But what has happened is that phrases and reasoning developed in and applicable to such situations have been applied to entirely different situations in which the court is not originating any rejection and is not being asked to, but is only being asked to *review* rejections actually made below. I believe this is a complete perversion of the procedural conception underlying the original adoption of the reasons of appeal technique in the 1839 act.

Looking upon the reasons of appeal as in essence a pleading, they should be considered sufficient if they get the parties and the issues and a sufficient record into court in such fashion that the court can deal with the issues. The business of modern courts is to decide issues and settle disputes and not to make life unnecessarily difficult for litigants with no gain to itself. As a typical example of making life difficult and of a waste of judicial energy the above-mentioned Sebald case will suffice.

In In re Sebald, supra, there were two reasons of appeal. The first alleged error in the rejection of claims on three named reference patents. The second read:

2. The board of appeals erred in not allowing said claims.

The court stated summarily, "The second reason of appeal is too broad to be considered" and never considered it again. Quoting R.S. 4914, the court said "It will be observed that our powers of revision are strictly limited by statute to the points set forth in the reasons of appeal." Just why reason "2" does not point to error in the affirmance by the board of the rejections made by the examiner is not at all clear to me. The crux of the case, which had two hearings, was that reason "1" referred to a primary reference and two secondary references

while the examiner had used *two* primary references, one of which was inadvertently omitted in the reason of appeal because the board had made no mention of it. On this ground the court held that it had no "jurisdiction" to consider the rejection based on the missing primary reference and the secondary references. At the same time, having so labored to find no *power* to act the court uttered the following lament:

"The narrowness of the scope of our revising powers in this jurisdiction has long been a matter of great concern to the court and members of our bar. We think it is at once apparent that our reviewing or revising powers are confined to such a narrow scope by the statute, which in this respect has not been changed for many generations, as to greatly handicap us in being helpful in cases like the instant one and other cases to which we shall allude."

The opinion then alluded to In re Tucker and Reeves in which the court was under no handicap and reversed the board in the end, to In re Wagenhorst, supra, where it managed to find authority to act on a reason of appeal which mentioned no reference by name, and to one other case in which the story was different, In re Lincoln et al., 126 F.2d 477, 29 CCPA 942. There one of the claims appears to have been rejected on the ground of estoppel, as to which no specific reason was filed, on which ground the court refused to consider it saying, "the correctness of such rejection is not before us." The reasons of appeal are not disclosed in the opinion.

### The Need for Reasons is No More

Reading many of these earlier cases, the conclusion is inescapable to me that much depended on which judge was looking at the reasons of appeal. Even identical courts could reach inexplicably different results. I have failed to find anywhere, though I cannot say it does not exist, a consideration of the changed circumstances since 1839. I think they are important, first of all, in helping us to interpret intelligently the statutory provisions as long as we are compelled to live with them and, secondly, as pointing to a need to revise them.

A century and more ago the reasons of appeal had an informative function which no longer exists, having been replaced by better means of communication. In Greenough v. Clark, 10 Fed.Cas. 1176, No. 5784, Judge Morsell said (1853), "From a careful examination of the provisions of the statute [of 1839], I am satisfied that the filing [of] the reasons of appeal must be considered as essentially the appeal itself; that the judge can judicially know nothing of the case until the party aggrieved presents to him his petition for a revision on appeal [in which the reasons were, in those days, repeated]." Looking into the oldest Patent Office Rules on which I can lay my hands, of 1886, the form therein for taking an appeal to the Supreme Court of the District of Columbia concluded the notice to be given to the Commissioner as follows (the bracketed matter being in the original—emphasis mine):

"And the said A. B. assigns the following reason for appealing from the said decision of the commissioner of patents, viz:

"[Here follow reasons, which should be full and explicit, *and constitute a brief of the appellant's argument.*]"

From such explicit reasons the Commissioner, who made that form, could tell what points he had to meet in giving the court his grounds of decision.

Today the whole proceeding is different. First of all, appeals are from decisions of one of the three Patent Office boards, which decisions are always contained in and supported by carefully written opinions. In both patent and trademark cases the examiner has furnished his answer to the appellant's brief before the board. Therefore, the examiner's grounds of rejection have been carefully enumerated and the board's disposition thereof is fully explained. When an appeal is taken to this court, the ap-

pellant files his notice, gets the Patent Office to deliver his record to the court, files his petition and the court clerk has the record printed. Thereafter the appellant files his printed brief containing his full argument as to why the Patent Office erred. Through no stretch of the imagination could present day reasons be considered as constituting "a brief of the appellant's argument." Only after all this has been done does the Solicitor for the Patent Office take up the case for consideration and the writing of appellee's brief. He has no need whatever for reasons of appeal at this stage.

The only reason to look into the reasons of appeal after receipt of appellant's brief is to look for trouble. And that is all too frequently done.

By reason of the essential nature of our appeals from the Patent Office in ex parte cases, the appellant *has* to get a reversal of *every* ground of rejection outstanding against him or he gets *nothing*. Therefore we know, as soon as he appears in our court, that he wants *all* grounds of rejection reversed, though he says no more in his notice of appeal than that he believes the decision below to have been in error, or desires to have it reversed.

As to any claim on appeal, no lawyer consciously appeals from less than all of the rejections outstanding against it; for if he prevailed on less than all, he could not get his patent. The same is true in a trademark registration appeal. I doubt that any lawyer has ever consciously appealed from the Patent Office without *believing* that he has asked for review of all grounds of rejection outstanding against whatever he still seeks.

To determine what the issues are, we on the court need never do more than read the rejection as stated by the examiner and the opinion of the board which affirms it. Until—and unless—we do this, the reasons of appeal are practically meaningless to us and, having done it, they are entirely superfluous.

Conditions having changed and the statute having become obsolete, what is primarily needed is statutory amendment and modernization. The opportunity was passed over in the 1952 codification and revision. Constant trouble with the statute since then requires that it be considered *now* in the interest of stopping judicial waste.

There is, furthermore, a glaring procedural inconsistency between appeals to the Court of Customs and Patent Appeals, which is a part of the Federal court system, and appeals to other Federal Courts of Appeal. In the Federal Rules of Civil Procedure, which have now been in force nearly a quarter of a century, rules 73 and 75 provide for the taking of an appeal by the filing of a simple notice. (Rule 73(b).) "No assignment of errors is necessary." (Rule 75(d).) [7] They had previously been required but were deliberately done away with for reasons expressed in the following words, which apply as well to "reasons of appeal" under 35 U.S.C. §§ 143, 144, and 145:

> "(1) That it is a pitfall which may prevent the consideration of a meritorious appeal simply because a proper assignment of error was not made; and
>
> "(2) The requirement often results in a verbose, repetitious, and longwinded list of alleged errors, many of which the appellant has not the slightest intention of pressing in the appellate court but which he has inserted either in an effort to protect himself against all possible

---

**7.** I recognize a practical problem if appellant wishes to appeal on less than the complete record. Rule 75(d) takes care of this in the following provision:
"If the appellant does not designate for inclusion the complete record and all the proceedings and evidence in the action, he shall serve with his designation a concise statement of the points on which he intends to rely on the appeal."
The problem, however, is related only to the contents of the record and not to the court's jurisdiction.

contingencies or in an attempt to confuse his adversary." [8]

I will conclude by characterizing the reasons of appeal, for reasons which I hope I have sufficiently set forth, by the term applied by Clark, C. J., one of the Advisory Committee which drew up the F.R.C.P., to assignments of error. Reasons of appeal are a "mummery." An appropriate statutory amendment should do away with them at the earliest possible moment.

> Of writing good statutes
> There is no end.

### SMITH, Judge (concurring).

"A system of procedure is perverted from its proper function when it multiplies impediments to justice without the warrant of clear necessity. By the judgment about to be rendered, the respondent, caught in a mesh of procedural complexities, is told that there was only one way out of them, and this a way he failed to follow. Because of that omission he is to be left ensnared in the web, the processes of the law, so it is said, being impotent to set him free. I think the paths to justice are not so few and narrow. * * *" (Mr. Justice Cardozo dissenting in Reed v. Allen, 286 U.S. 191, 209, 52 S.Ct. 532, 537, 76 L.Ed. 1054.)

It is with great reluctance that I concur in the decision in this case. It is shocking to my sense of justice that by statute (35 U.S.C. §§ 142, 143 and 144) this court is rendered "impotent" to aid a party seeking relief and that "the paths of justice" in this court are "so few and narrow." Because of the controlling statutory provisions, we have no discretion but to deny a decision on the merits of this case because of appellant's failure to comply with an anachronistic procedural hangover which, as Judge Rich has pointed out, had its origins early in the 19th century,—a time when just such procedural technicalities threatened to make a farce out of the administration of justice by the judicial system. I cannot conceive of any present necessity for a statutory requirement which requires that "reasons of appeal" be filed at the time a notice of appeal is filed in the Patent Office. I regret that Congress has not expunged this requirement from 35 U.S.C. §§ 142, 143 and 144 so that the practice in this court can follow the modern procedural practices permitted in other Federal courts,[1] to the end that we too may embrace the philosophy stated by Mr. Justice Frankfurter in Indianapolis v. Chase National Bank, Trustee, 314 U.S. 63, 69, 62 S.Ct. 15, 16, 17, 86 L.Ed. 47, that "Litigation is the pursuit of practical ends, not a game of chess."

My dislike for the necessity, under 35 U.S.C. § 144, of disposing of the present appeal because of appellant's failure to comply with the technicalities of 35 U.S.C. § 142 is based on the essential unfairness in a procedure by which a litigant can be put to the time and expense of perfecting, briefing and arguing an appeal only to find it is doomed to dismissal because of his initial failure to comply with the statutorily sanctioned nicety requiring "reasons of appeal." This is particularly appalling in a case such as the present where this failure was ignored by the other party [2] until the case was ready for decision on its merits, and so far as I am able to determine, without any detriment to its position.

---

8. Hearings before Judiciary Committee, House of Representatives, 75th Cong., 3rd Sess., Serial 17, p. 128 (1938), as quoted in 7 Fed.Rules Serv. 980.

1. Since the decision of Glidden Company v. Zdanok et al., (decided together with Lurk v. United States), 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671, it is clear that it would be desirable to establish the practice and procedure before this court as consistent as is possible with the Federal Rules of Civil Procedure which govern other "Article III courts."

2. While the present case is an *ex parte* appeal, there is a very real "other party" here represented by the solicitor of the Patent Office.

There is, however, another important reason why a decision such as the present should be abhorrent to all those interested in the orderly and speedy administration of justice. This case has consumed already as much or more of the time of the judges of this court than it would have consumed to determine the appeal on its merits; it has required many hours of study, legal research and deep "soul searching" by all judges, and all to what purpose? Simply to be forced to say that since appeals to this court are governed by 35 U.S.C. §§ 142 and 144 [3] and since it is not our function to legislate, we can do nothing here but apply the governing statutory provisions. If the statutory provisions are allowed to stand, this court will be required necessarily to continually warn the bar through hard decisions, such as I consider the present one to be, of the built-in "booby trap" which 35 U.S.C. §§ 142 and 144 provide for the unwary litigant.

While I question whether the absence of reasons of appeal here is a "jurisdictional defect" which can be raised at any time,[4] my views in this regard are necessarily subordinate to the long line of contrary decisions of this court upon which the majority of the court relies in its application of the statute. Unfortunately for the appellant here, I have been unable to find any authority in the Federal Rules of Civil Procedure which would permit this court to ignore the current statutory provisions requiring reasons of appeal. It is my hope, however, that a decision such as the present may provide the incentive required to bring about a re-examination of the limiting statutory provisions and perhaps result in the enactment of such changes therein that the practice in this court may at last reflect the enlightened procedural reforms which our sister Federal courts were free to adopt some years ago.[5]

One has but to read the decisions in the numerous cases which have been dis-

3. See Administrative Agencies and the Courts, Frank E. Cooper, (University of Michigan, 1951), pp. 330–332.

4. Under the Federal Rules of Civil Procedure, I am certain the defect in the "notice of appeal" here would not be so considered. In Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, Mr. Justice Goldberg said:
"The defect in the second notice of appeal did not mislead or prejudice the respondent. With both notices of appeal before it (even granting the asserted ineffectiveness of the first), the Court of Appeals should have treated the appeal from the denial of the motions as an effective, although inept, attempt to appeal from the judgment sought to be vacated. Taking the two notices and the appeal papers together, petitioner's intention to seek review of both the dismissal and the denial of the motions was manifest. Not only did both parties brief and argue the merits of the earlier judgment on appeal, but petitioner's statement of points on which she intended to rely on appeal, submitted to both respondent and the court pursuant to rule, similarly demonstrated the intent to challenge the dismissal.
"It is too late in the day and entirely contrary to the spirit of the Federal Rules

of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities. 'The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.' Conley v. Gibson, 355 U.S. 41, 48 [78 S.Ct. 99, 2 L. Ed.2d 80]. The Rules themselves provide that they are to be construed 'to secure the just, speedy, and inexpensive determination of every action.' Rule 1."

5. Rule 73(b) Federal Rules of Civil Procedure, 28 U.S.C., provides, in part as applicable, that:
"*Notice of Appeal.* The notice of appeal shall specify the parties taking the appeal; shall designate the judgment or part thereof appealed from; and shall name the court to which the appeal is taken. * * *"
Rule 75(d), F.R.C.P., provides:
"*Statement of Points.* No assignment of errors is necessary. If the appellant does not designate for inclusion the complete record and all the proceedings and evidence in the action, he shall serve with his designation a concise statement of the points on which he intends to rely on the appeal. * * *"

missed by this court for failure of the appellant to state what the court considered to be sufficient reasons of appeal in compliance with 35 U.S.C. § 142 to appreciate the real importance of this problem to litigants.[6] In my brief service on this court I have been amazed at how many times representatives of the Patent Office have raised this technical point at oral argument.

If, in fact, a Notice of Appeal fails to state a ground for appeal, it seems to me the least that should be required is that the defect be brought to the attention of the court by a motion timely made rather than to encourage perpetuation of the present tactical procedures.

I feel now, as I have in several prior cases, that liberality in the interpretation[7] of 35 U.S.C. § 142 may enable us to handle some of these situations. However, where, as here, the Notice of Appeal filed with the Commissioner gives us absolutely nothing upon which to exercise our right to "interpret" this section, we are effectively prevented from acting on the merits of the appeal and have no alternative but to deny the relief sought.

As I have stated previously, I would like to be able to consider a defective "Notice of Appeal," such as is here present, to be at most a procedural defect which is corrected by the subsequent Petition of Appeal in this court and the complete statement of reasons for the appeal which are found in appellant's brief. I would like also to be able to hold that the defects in the original Notice of Appeal are waived by the failure of the Patent Office to raise the question at an earlier point in the procedure. However, as pointed out by Judge Rich in his concurring opinion, prior decisions of this court have construed such a defect to be a "jurisdictional" defect which may be raised at any time. While I would have no objection to overruling these cases if we could thereby get rid once and for all of this troublesome problem, it seems to me that this entire matter has now

reached the point where it becomes the function of the Congress rather than of this court to do what should be done to change the controlling statutory provisions.

50 CCPA

---

6. See Judge Rich's exhaustive concurring opinion.

