Application of Alleyne C. HOWELL, Jr.
Patent Appeal No. 6724.

United States Court of Customs and Patent Appeals.
Feb. 13, 1962.

Samuel Scrivener, Jr., Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (S. Wm. Cochran and D. Kreider, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.\*

SMITH, Judge.

The Board of Appeals affirmed the final rejection by the primary examiner of

Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28, United States Code.

claims 22, 23 and 24 in appellant's application serial No. 494,385 filed March 15, 1955 on a "Connector for Electrical Conductor," as a division of an application filed August 29, 1952, by appellant jointly with four other inventors, which application issued as U. S. Patent No. 2,-704,309 on the same day the present application was filed.

The present application discloses an invention which relates to the assembly of known conductor bars for conducting electricity in electrical distribution systems for traveling cranes, hoists and the like. Such conductor bars have a cross section in the shape of a figure 8, with two vertically spaced, circular lobes connected by a flat web. The bars may be either of hollow tubular construction formed from sheet metal or they may be solid, with sockets formed in the ends of the lobe portions.

A conductor installation is made up of a plurality of individual bars connected with their ends in abutting relationship. Connector pins are inserted into openings in the ends of each of the abutting lobes of adjacent bars. The invention claimed is described in appellant's brief as "Howell's simple invention of putting the openings adjacent the ends of the bar sections so that one person, operating a simple tool, can, without moving from his place, produce a strong force fit connection."

The "simple tool" referred to by appellant is a pivoted lever type connector tool having attaching pins on one pair of movable ends for connecting the tool in the holes provided in the flat web portions of adjacent but spaced conductor bars. By applying pressure to the other ends of the pivoted levers, force is applied to move the ends of the conductor bars together and to press the connector pins into tight engagement in the recesses provided in the abutting lobes of the adjacent bar sections.

Appealed claim 22 reads as follows:

"22. As a new article of manufacture, a conductor bar for industrial electrical distribution systems adapted to be connected in end-to-end relation with other bars of the same construction to form an elongated conductor of electricity, said bar being 8-shaped in cross section having spaced hollow parts of circular cross section connected by a flat web part, a pin of full circular cross section having its length partially received within the end part of at least two of said hollow parts and having a part protruding therefrom to be received in the hollow circular part of an adjacent aligned conductor bar, and two transverse openings through said flat web part of the bar which are respectively adjacent the ends of the bar and are spaced from their respective ends by a distance such that the transverse openings in the adjacent ends of aligned conductor bars will receive elements on the arms of a manually operable lever tool whereby the protruding parts of the pins of one of the aligned conductor bars may be forced into the aligned hollow parts of the adjacent conductor bar."

Claim 23, like claim 22, is drawn to a single conductor bar but in addition calls for a sheath of electrically insulating material mounted on the conductor bar.

Claim 24 recites a conductor bar assembly made up of conductor bars in abutting relationship and, in addition, calls for a sheath as recited in claim 23 but specifies that a separate sheath surrounds the end parts of the bars which are not covered by the first sheath.

The rejection is based on the following references:

| | | | | |
|---|---|---|---|---|
| Sollmann | 653,970 | July | 17, | 1900 |
| Benzel | 1,055,253 | March | 4, | 1913 |
| Cowen | 1,109,968 | Sept. | 8, | 1914 |
| Connell | 2,668,199 | | | |
| (filed Sept. 2, 1947) | | Feb. | 2, | 1954 |

The examiner held claims 22, 23 and 24 unpatentable over Connell in view of Cowen and Benzel while additionally making reference to Sollmann. In affirming the examiner's rejection, the Board of

Appeals agreed with the examiner that these references show that the claimed subject matter would have been obvious to a person having ordinary skill in the art.

■ The "Reasons of Appeal" in appellant's notice of appeal to this court are that the Board of Appeals erred (1) in rejecting claims 22, 23 and 24 on the Sollmann, Benzel, Cowen and Connell patents and (2) in not allowing claims 22, 23 and 24. Because of the general nature of these "Reasons of Appeal," the solicitor in his brief stated that the court "is confronted with the question of whether such general statements comply with the requirement of 35 U.S.C. [§] 142 that appellant 'shall file in the Patent Office his reasons for appeal, *specifically* set forth in writing'." [Emphasis added.]

As this court stated in In re Kopplin, 146 F.2d 1014, 1015, 32 CCPA 848, 849:

"Appellant has clearly advised us and the Patent Office of the issue, and it is not necessary for us to search the record in order to discover the basis of the appeal. The Solicitor in his brief discussed and applied all of the references. Therefore we will consider all of them."

■ The precise ground of the examiner's rejection is not altogether clear. As interpreted by the board, it is a rejection for obviousness based on 35 U.S.C. § 103. We agree with this interpretation. The cited prior art discloses the factual background for this rejection.

The Cowen patent discloses a railroad track for toy electric trains. Track sections are formed of sheet metal and have a cross section in the shape of the figure 8. Pins of semi-circular cross section are inserted into the hollow portions at each end of the track sections. When the sections are fitted together, the portions of the semi-circular pins extending from one section are fitted into the remaining semi-circular openings of the adjoining section to bring the ends of the sections into abutting relationship.

The Benzel patent discloses a joint construction for rail sections comprising a track portion joined by an intermediate web to a base portion. As shown, the ends of each rail section includes vertically spaced joint elements, such as a projecting pin and a socket. A joint is formed by placing the ends of the adjacent rail sections in abutting relationship with the pin in one section fitting into the corresponding recess in the other section. The rail sections are provided with openings in their webs near their ends. A plate having openings coinciding with the openings in the adjacent rail sections, is placed on each side of the joint, with bolts passing through the openings to secure the sections together.

The Sollmann patent discloses a toy electric railroad track of conventional construction. A track section is made up of two rail portions mounted in parallel relationship. Each rail portion is made up of sheet metal shaped to provide a hollow tread portion of circular cross section. Track sections are joined by pins which fit half way into the ends of the hollow tread of each rail to make "good electrical and mechanical connection" between the abutting ends of the adjacent rail sections.

The examiner's reliance upon Connell to show the particular conductor bar construction with which appellant's invention is to be used has been challenged by appellant for the reason that the present application, while filed on March 15, 1955, is entitled to the benefit of the filing date of the parent application of appellant and four others which was filed on August 29, 1952 and thus is entitled to an effective filing date earlier than the Feb. 2, 1954 issue date of the Connell patent. Appellant's position is that the Connell patent does not describe the same invention as that here claimed and thus is not available as a reference under section 102(e). Appellant also argues that such a reference cannot be used to show "obviousness" of the claimed invention to support a rejection under 35 U.S.C. § 103 since at the time of filing the parent application, Connell's invention was not known to those of ordinary skill in the art.

It is unnecessary to determine the issue thus raised by appellant. Connell but corroborates the known state of the art as to the particular "figure eight" conductor bars which were described in the application of the parent patent on which appellant relies for his earlier effective filing date, and which states:

"In detail, the invention is particularly adapted to be employed in connection with a "figure eight" type of conductor track or trolley wire * * *. The figure eight" tubular conductor or trolley track is particularly popular for sliding shoe trolleys because, in cross-section it comprises a pair of generally circular vertically spaced enlarged portions formed from a unitary section of sheet metal which greatly enhances the bending resistance of the conductor track without unduly increasing its weight." [1]

The Connell patent describes the same conductor bar construction as follows:

"In conventional electrified systems employing overhead rails, overhead conductor bars are employed for supplying electric current to hoisting means and the like mounted upon the conveyors being used * * *.

* * * * * *

"The construction illustrated in the drawings includes a conventional elongated conductor bar 15 for carrying electric current, this bar being of the conventional so-called figure 8 construction having a connection web 15a integrally joining the upper and lower lobes of the figure 8 bar."

Thus, it is clear that the figure-8 type conductor track was well-known to persons of ordinary skills in this art at a time prior to appellant's effective filing date. Connell, thus is not used as a technical "reference" in the sense of 35 U.S.C. § 102. It corroborates as of its filing date in 1947, the statement made by appellant that the "figure eight" type of conductor track was "conventional" prior to appellant's effective filing date.

Appellant also objects to the use of the Cowen, Sollmann and Benzel patents as references on the basis that they are said to be from "borderline non-analogous arts." He concedes, however, that these patents should not be completely disregarded as references, but contends that their disclosures must be strictly construed in determining whether the claims in issue are patentable.

This court stated in In re Krogman, 223 F.2d 497, 501, 42 CCPA 1037, 1042:

"Whether a reference is pertinent, or a combination of references is proper, depends solely upon what is reasonably and realistically taught thereby in relation to that which is claimed."

We think the Board of Appeals properly answered appellant's argument as to the non-analogous status of these references by indicating that the significant function disclosed and claimed in the present application is the same as the functions disclosed in the references. The fact that the patents to Cowen and Sollmann, relate to toy railroad tracks, and that the Benzel patent, is directed to regular railroad track, does not change the fact that all involve disclosures of means for providing joints or connections between such track sections. In the case of the Cowen and Sollmann references the joints provide an electrical as well as a mechanical connection between the track sections.

In In re Kylstra, 87 F.2d 487, 488, 24 CCPA 938, 940, this court stated:

"It does not seem to us that the broad differences between the arts of street car operation and machine gun firing are decisive of the issue here. The actual *art* is numbering or counting, with a display of the result at a desired location, and we regard such *art* as being the same in both the device of appellant and that of the Cravath patent. In re Weingartner, 58 F.(2d) 442, 19 C.C.P.A. (Patents) 1202."

1. This language also appears in the application at bar.

The art with which we are here concerned is the art of connecting adjacent ends of electrically conductive rail sections. The disclosures in Cowen, Sollmann and Benzel are directed to this identical art and, therefore, provide a proper basis for the rejection.

Appellant asserts in his brief that two of the "salient features" of his invention are:

"1. The 8-shaped conductor bar with hollow circular lobes to tightly receive connecting pins. (All three claims).

"2. A hole in the web of the bar at each end thereof and spaced from the end of the bar by such a distance that the holes in adjacent ends of two bars may be engaged by pins on a lever tool to pull the hollow circular lobes of the bar onto the connecting pins." (All three claims).

The examiner and the Board of Appeals found these "salient features" of the appealed claims to be obvious to one of ordinary skills in the art at the time the invention was made. We think that the examiner and board were correct in so finding.

The "8-shaped conductor bar" was known to the art prior to appellant's effective filing date in 1952. Appellant disclosed in his application that, while he "preferably" uses the hollow tubular construction, "a solid conductor of similar outer configuration" may be employed. There is no patentable distinction between these two embodiments insofar as the presently claimed invention is concerned. The use of pins to be inserted into either the hollow lobes or a socket in the solid lobes of an adjacent section is a well-known method of connecting sections of track as shown by Sollmann, Benzel and Cowen. That the pins are received "tightly" is merely a requirement of good design.

Benzel's use of openings adjacent to the ends of his rail sections for securing fish plates in position would suggest to one of ordinary skills in the art the desirability of connecting adjacent ends of figure-8 shaped conductor bars by the use of a bolted fish plate connecting means. Such modification would involve providing transverse openings through the webs of the bars adjacent the ends. Appellant urges that the opening near each end of his bar is "so positioned with respect to the end of the bar that lever tool parts may be received within the opening and the similarly positioned opening in the adjacent bar for tightly forcing the bar sections together onto the connecting pins." The corresponding references to a lever tool in the claims relate only to the manner of utilizing the openings in the bar or bars being claimed. It is not seen how the reference to the lever tool can impart patentability to the claims which are directed to the conductor bar per se. In following the teaching of Benzel, the holes in the web of the track sections to be joined, whether they be figure-8 or those shown by Benzel, would meet the precise requirements of appellant's claims. Thus these openings would be spaced from the ends of the bar a relatively short distance and clearly could "receive elements on the arms of" an appropriately designed "manually operable lever tool" suitable for forcibly connecting the ends of the adjacent bars.

For the foregoing reasons, we hold that both of appellant's "salient features" as defined in claim 22 would have been obvious to one of ordinary skills in the art at the time the invention was made.

Claims 23 and 24 include recitations relating to the U-shaped insulation sheath. The mere addition of such a sheath does not impart patentability to the old article claimed in claim 22. The longitudinal length limitations in claims 23 and 24 that one sheath is so designed to leave exposed the end parts of the conductor bar and another is designed to cover them, are but claims to an obvious feature of the known insulated conductor tracks.

We agree with the Board of Appeals that it constituted a matter of obvious choice to limit the extent of the sheath so as to leave exposed the end parts of the

conductor bar containing the transverse openings. If the entire length of the bar assembly is to be covered by a sheath, it would be obvious to one of ordinary skill in the art to cover the abutting end portions of adjacent bars, extending beyond the transverse openings, with a section of sheath separate from the section on the central portion of the bar.

From our consideration of the appealed claims and from our study of the references we find nothing in claims 22, 23 and 24 which would not have been obvious, at the time of the appellant's effective filing date in 1952, to a person having ordinary skill in the art of connecting in end-to-end relationship the adjacent ends of conductor bars for industrial electrical distribution systems.

For the foregoing reasons, the decision of the Board of Appeals is affirmed.

Affirmed.