50 CCPA

**Application of Carl ARNOLD and Heinrich Brandt.**

**Patent Appeal No. 6843.**

United States Court of Customs and Patent Appeals.

April 25, 1963.

Michael S. Striker, New York City, for appellant.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Associate Judges, and Associate Judge JOSEPH R. JACKSON, Retired.

MARTIN, Judge.

This is an appeal from the decision of the Board of Appeals of the Patent Office affirming the Primary Examiner's

rejection of claims 18 through 28, the only remaining claims, of appellants' application for a patent on a process for producing a welding flux product. Some question has arisen as to the sufficiency of the reasons of appeal in this case.

We shall dispose of this matter before discussing the merits of the appeal. The reasons of appeal are as follows:

1. It was error to affirm the decision of the Examiner in his rejection of claims 18 to 28.

2. It was error to refuse to allow the rejected claims.

The question of whether the reasons of appeal are sufficient under 35 U.S.C. §§ 142, 143, 144, has caused much controversy in this court. There really is no hard and fast rule upon which we can rely. However, the case of In re Kopplin, 146 F.2d 1014, 32 CCPA 848, seems pertinent to the discussion here. There this court held that the following reason of appeal was sufficient to comply with the statutes: [1]

The Board of Appeals erred in rejecting said claims and each of them for the reasons and on the references cited against them, respectively.

This decision was approved in In re Howell, 298 F.2d 949, 49 CCPA 922.

This court stated in the Kopplin opinion:

"While it is quite true that there is no specific mention of the Dodge, Fowler and Novotny patents in the reasons of appeal, appellant assigned as his first reason of appeal that 'The Board of Appeals erred in rejecting said claims and each of them for the reasons and *on the references cited against them, respectively*.' (Italics ours.) That reason is the equivalent of setting out in separate reasons of appeal the Dodge, Fowler and Novotny patents. The only reason for rejecting the claims was that they were unpatentable over the prior art. Therefore we are of opinion that that reason of appeal is sufficient."

We see no *significant* difference in the language of the reasons of appeal in the Kopplin case and the language used in the case before us. This is especially true because the examiner and the board relied on only one reference as the basis for rejection of the claims in this case. Consequently we consider the reasons here to adequately disclose the basis of the appeal. We therefore will not dismiss this appeal for insufficiency of the reasons of appeal and we will now discuss the merits involved herein.

Claims 18 and 22 are representative and read:

"18. A method of producing a particulate welding flux product, comprising the steps of forming granules having a size greater than a predetermined size of substantially uniform composition of a liquid and a mixture of solid particles adapted to serve as a welding flux, said granules containing components which give-off gas when heated above a first predetermined temperature and said granules melting only above a second predetermined temperature which is above said first predetermined temperature; and heating said granules at a temperature between said first and said second predetermined temperatures so as to degassify [sic] said granules while preventing substantial fusing of the same, thereby forming a degassified [sic] welding flux consisting substantially of individual granules of uniform composition and being free of small dust-like particles.

"22. A method of producing a particulate welding flux product, comprising the steps of mixing a mixture of solid particles adapted to serve as a welding flux with a liquid so as to form a wet mixture; forming granules of substantially uni-

[1]. This case appears to be somewhat inconsistent with In re Dichter, 110 F.2d 664, 27 CCPA 1060.

form composition from said wet mixture of solid particles adapted to serve as a welding flux, said granules containing components which give-off gas when heated above a first predetermined temperature and said granules melting only above a second predetermined temperature which is above said first predetermined temperature; and heating said granules at a temperature between said first and said second predetermined temperatures so as to degassify [sic] said granules while preventing substantial fusing of the same, thereby forming a degassified [sic] welding flux consisting substantially of individual granules of uniform composition."

The single reference relied on is

Landis et al. 2,474,787 June 28, 1949

Appellants' application relates to the producing of welding flux granules of substantially uniform composition by a process which includes granulation of a mixture of basic fluxing materials such as mullite, alumina, silica, etc. with additives such as "for example sodium silicate glass, iron oxide, borax, * * * fluorides of calcium, lithium, sodium, potassium, cryolite, etc." The basic flux ingredients, which are conventional, generally vary between 20–80 parts by weight with the additives making up the balance of the mix. The formed granules are said to be degasified by heating without melting the mass of the ingredients substantially. Appellants disclose that "Generally during heating of the granules so as to degassify [sic] the same, at least a portion of the granules adhere to each other and these adhering masses must be broken up before utilization of the welding flux." The method is described as effective in preventing substantial fusing together of the granules and in holding the formation of fines to a value below 5%.

The Landis et al. patent also relates to granular free-flowing particles of a weld-flux composition wherein the component materials are uniformly distributed in said particles. The patentees state that prefused granular fluxes which had been ground to a particle size, which imparted to them a free-flowing property, had provided the most satisfactory performance in arc welding. They found, however, that a satisfactory flux composition could be produced without subjecting the ingredients to prefusion and subsequent grinding. The desired flux ingredients are mixed in finely powdered form with a liquid solution of water glass, using the minimum amount required to bind together or agglomerate the flux ingredients. The resulting mass is thereupon dried at a temperature below the fusion point of the ingredients. The water is driven off thereby, and the product is then reduced to the desired particle size as by passing it through sizing rolls.

In affirming the examiner's rejection of the claims as unpatentable over the Landis et al. patent, the board found that the patentees disclosed forming granules from their starting materials, that the heating step of the reference satisfies the degasifying step of the claims, and stated that it was not convinced that the method of forming granules recited in appellants' claims is patentably distinct from the granule-forming method of the reference. The board noted also that the patentees state they have a minimum production of fines, and it regarded that to be a specific objective which appellants seek.

Appellants rely on recitations that their granules are of uniform size and "free of small dust-like particles." They also contend in their briefs that they distinguish from Landis et al. both in the recited step of forming granules and in the step of heating the granules to form a degasified welding flux. It is urged that there is no "granulation" step in the true sense of the word in the Landis et al. patent. Even assuming that Landis et al. do eventually "form granules from their starting materials," such granules, appellants contend, are not formed prior to the patentees' heating step. As to the heating step, appellants urge that the patentees heat only to dry, that is to evaporate, the water from

954

the product while they heat to degasify the granules of the welding flux composition.

In their patent, Landis et al. summarize their invention as follows:

"* * * we have found that it is entirely practicable to obtain a flux composition which has the desirable free-flowing and other characteritics [sic]. by intermixing selected known flux ingredients in finely comminuted or powdered form together with a sufficient amount of water glass, i. e. sodium and/or potassium silicate, containing a sufficient amount of water to be liquid. The amount of water glass also added will be the minimum required to bind together or agglomerate the other ingredients, the essential requirement being that all of the ingredients are uniformly distributed throughout such mass. Thereupon, the latter is dried, at a temperature substantially below the fusion point of the ingredients, so as to drive off the water introduced through the medium of the water glass or otherwise, and the resulting product is then reduced, as by grinding, to the desired particle size. *Such grinding operation will not be particularly difficult since the dried product thus obtained is considerably more easily ground than the pre-fused silicate compositions currently in use. In fact, all that is required is to pass the materials through sizing rolls whereby the agglomerated, nodular mass may be broken down with a minimum production of fines.*" [Emphasis ours.]

That description clearly shows that water glass and water are intermixed with the flux ingredients to bind together or agglomerate them together in such manner that they are *uniformly distributed throughout the mass*. The agglomerated material is then heated to a temperature below the fusion point of the ingredients and subsequently reduced to the desired particle size by a process which may amount to merely passing the material through sizing rolls "whereby the ag-

glomerated, nodular mass may be broken down with a minimum production of fines."

We find nothing in appellants' process which would be unobvious over Landis. et al. to one skilled in the art.

Appellants are obliged to concede that "the composition of the welding flux of Landis et al. is substantially the same as" their composition. Appellants disclose that the granulation of the mixture of particles adapted to serve as a welding flux may be carried out "in the usual manner" by mixing the flux particles. with a liquid, as water, in such manner that small coherent masses of the particles are formed. The water may be added to the mixture of particles in the form of a stream. Appellants, as indicated by their example 3, may employ sodium silicate in their flux composition. The Landis et al. patent discloses the initial mixing of sodium silicate containing a sufficient amount of *water* to be liquid with powdered flux ingredients.

Appellants contend that the whole mass of Landis et al. prior to heating is clearly in the form of a slurry and urge that while there may be discrete particles. of powdered manganese dioxide, iron. oxide, alumina, and other individual components in that mass, there are no granules of flux composition containing "a proportioned and defined mixture of such components." However, we are unable to agree with that contention since Landis et al. not only emphasize in describing their process that the ingredients must. be "uniformly distributed throughout" the mass of material but also specifically state that each particle of their final product comprises a *uniformly distributed mixture* of the finely ground ingredients bound together by the dry water glass.

As to appellants' heating step, Landis. et al., like appellants, avoid heating the product to a temperature as high as the fusion point of the ingredients. It is true, as appellants point out, that Landis et al. do not describe their heating step as degasifying the material. However, appellants do not disclose what gases are to be liberated from the product. Al-

though the temperatures referred to by Landis et al., 700° F to 1200° F, are lower than those disclosed by appellants, "preferably between about 900–1000° C," it is apparent that the former temperatures *will degasify* to the extent of removing any gases that are freed as a result of the particular temperature and the particular time it is maintained. There is no evidence demonstrating that the difference in temperatures is anything more than an obvious matter of choice associated with known factors such as the characteristics of the specific ingredients. We thus find no error in the conclusion reached by the board that the heating step of Landis et al. satisfies appellants' step of heating to degasify the granules.

The limitation "being free of small dust-like particles" at the end of claim 18 must be viewed in the light of appellants' disclosure. In the application, they state that "The dust portion of the products * * * can without difficulty or extraordinary measures be easily maintained below 5%." Landis et al. refer to their process as resulting in a minimum production of fines. Thus appellants' product apparently is not completely free of fines and the reference recognizes the desirability of holding fines to a minimum. Recognizing that a portion of appellants' own granules may adhere after being heated and require breaking up, and that, as pointed out by the board, the patentees disclose that their grinding may amount merely to passing the agglomerated mass through sizing rolls, there is no basis for concluding there is any significant difference between the processes in respect to the amount of fines produced.

Certain claims set forth specific sizes of granules which are degasified. We find nothing in the record to demonstrate that sizes are critical or that their selection is anything more than an obvious matter of choice.

For the foregoing reasons, the decision of the board is affirmed.

Affirmed.

JACKSON, Judge, concurring in part and dissenting in part, with whom WORLEY, Chief Judge, joins.

While I agree with the majority on the result reached, I disagree that appellants have satisfactorily complied with the provisions of 35 U.S.C. § 142. In re Dichter, 110 F.2d 664, 27 CCPA 1060.