**Application of Charles S. CASTNER.**

**Patent Appeal No. 75–532.**

United States Court of Customs
and Patent Appeals.

June 26, 1975.

Eugene F. Buell, Pittsburgh, Pa. (Buell, Blenko & Ziesenheim, Pittsburgh, Pa.), attorney of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, Henry W. Tarring, II, Washington, D. C., of counsel.

BALDWIN, Judge.

This is an appeal from the decision of the Patent and Trademark Office Board of Appeals affirming the examiner's rejection of claims 1–8, all of the claims remaining in appellant's application, serial No. 86,292, filed November 2, 1970,[1] entitled "Bovine Hygienic Agent." We affirm.

## The Invention

Appellant has invented a composition useful as a hand wash, udder wash, and teat dip. The composition is described as "an antiseptic, anti-chap, healing and cleaning agent for combating infections and promoting healing of both epidermal and subdermal bovine teat tissues."

Claims 1–5 are illustrative of appellant's composition:

1. A bovine hygienic agent comprising:

| | |
|---|---|
| Hydrolyzed Cocoa Butter Fatty Acid | About 2% to 15% |
| Cocoanut Oil Fatty Acid | About 10% to 25% |
| Isopropanol | About 3% to 10% |
| Glycerine | About 2% to 10% |
| Germicidal Agent | About 0.5% to 5% |
| Coupling Agent | 0% to 2% |
| Hexylene Glycol | About 5% to 10% |
| Surfactant | About 0.5% to 2.5% |
| Sodium Phosphate | 0% to 1% |
| Alkali Metal Hydroxide | About 0.5% to 3% |
| Water | Balance |

2. A bovine hygienic agent as claimed in claim 1 wherein the germicidal agent is a member selected from the group consisting of hexachlorophene, dichlorophene, chlorhexadene, sodium tetraborate, methylbenzathonium chloride, methylbenzlkonium chloride.

3. A bovine hygienic agent as claimed in claim 2 wherein the surfactant is sodium alkyl aryl sulfonate.

4. A bovine hygienic agent as claimed in claim 2 wherein the coupling agent is ethylene diamine tetraacetate.

5. A bovine hygienic agent as claimed in claim 2 wherein the surfactant is isooctylphenoxy polyethoxy ethanol.

Claims 6–8 are somewhat narrower than claims 1–5. For example, the alkali metal hydroxide component is recited in claims 6–8 as sodium hydroxide; claim 7 recites lanolin in place of glycerine; claims 6 and 7 recite specific percentages of each component rather than ranges; and claim 8 calls for a range of 0.5% to 2% of ethylene diamine tetraacetate rather than the corresponding 0% to 2% coupling agent of claim 1.

As evidence of the utility of appellant's invention, several herds totaling 761 cows were divided into two groups,

[1]. A continuation-in-part of application serial No. 12,831, filed February 19, 1970.

one being treated with the following composition:

| | |
|---|---|
| Hydrolyzed Cocoa Butter Fatty Acid | About 5% |
| Cocoanut Oil Fatty Acid | About 20% |
| Sodium Alkyl Aryl Sulfonate | About 2.5% |
| Glycerine | About 3.4% |
| Hexachlorophane [sic] | About 4.3% |
| Isopropanol | About 3.4% |
| Ethylene diamine tetraacetate | About 1.0% |
| Hexylene Glycol | About 10.0% |
| Monosodium phosphate | About 0.75% |
| Sodium hydroxide | About 0.95% |
| Water | Balance |

The data generated from the study were presented in tabular form in appellant's specification. In pertinent part, the results indicate that over a thirty-one day period (July, 1970), the treated cows averaged 57 lbs. more milk production per cow than those in the untreated group.

### The References

Zbornik et al.
(Zbornik)      3,250,681      May 10, 1966
Noseworthy     3,326,808      June 20, 1967
The Merck Index (Merck), Eighth Edition (1968), pp. 236, 353, 531, 681 and 955.

Noseworthy discloses a liquid detergent composition useful as a skin cleanser. The composition includes about 0.1% to 6% by weight of a disinfectant agent, about 10% to 20% of a water-soluble organic anionic detergent, about 2% to 8% of a super fatting agent, about 1% to 5% of a polyethylene glycol ether, and sufficient water to total 100%. As applied against appellant's invention, Noseworthy's composition includes derivatives of fatty acids, such as sodium cocoanut monoglyceride monosulfate and sodium salts of higher alkyl aryl sulfonates as the detergent, lanolin as the emollient, hexachlorophene as the disinfectant agent, and other optional ingredients which include a fatty acid alkanolamide, such as a cocoanut acid diethanolamide, as a foam booster or stabilizer and a chelating agent, such as ethylenediamine-tetraacetic acid disodium salt.

Zbornik discloses a number of bacteriostat compositions. Included within such compositions are a bacteriostat in combination with glycerol and alcohol in a suntan lotion, potassium hydroxide, ethanol, sodium hexametaphosphate and glycerol in a shampoo, ethanol in a mouthwash and alkyl aryl sulfonates in detergents.

Lastly, Merck discloses dichlorophene as a germicide in soap, methylbenzethonium chloride as a topical disinfectant, sodium borate as an antiseptic or detergent, and the use of hexylene glycol in cosmetics.

### The Rejection

Claims 1–8 stand rejected under 35 U.S.C. § 112, both first and second paragraphs. The board expressed difficulty in interpreting the meaning of the term "hydrolyzed cocoa butter fatty acids." The board stated:

Even if we assume that those skilled in the art would know what cocoa butter is and what fatty acid glycerides are present therein, the substance in question is apparently not the fatty acids of the glycerides, which would be obtainable by hydrolyzing the latter, but something obtained by hydrolyzing, if this be possible, such fatty acids. The brief says, "The hydrolysis of fatty acids is well known and needs no explanation." We are unable to agree. We do not find any evidence in the record that one would know how to go about hydrolyzing fatty acids which are already hydrolysis products, or what one would get if he did so, and we are unable ourselves to supply the information which is missing. We affirm the rejection under 35 U.S.C. 112, first and second paragraphs.

The board further affirmed the examiner's rejection of claims 1–8 under 35 U.S.C. § 103 as being unpatentable over Noseworthy, Zbornik and Merck. As stated by the examiner in his answer:

The claimed compositions are no more than combinations of well known classes of compounds recognized in the art as useful in skin treating compositions. Thus, the Noseworthy Patent teaches skin treating antiseptic detergent compositions containing fatty acid derivatives, antiseptics, surfac-

tants, acidifiers, chelating agents, essential oils, dyes and solvents, all of the type claimed, combined and employed as skin cleansers and conditioners to prevent irritation, i. e. chapping * * *. Zbornik et al. teach bacteriostatic compositions useful on skin and in agriculture employing chelating agents, alcohols, glycerine and sodium hydroxide. Merck teaches one of the specific bactericides employed as old and hexylene glycol as useful in cosmetics. Thus all the ingredients specifically and generically are old, and well known for skin treating compositions. Appellant's intended use as a bovine teat dip is not patentably distinguishable from other skin treating cleansing antiseptic compositions. Appellant's argument regarding the hydrolyzed cocoa butter fatty acid ingredients is not well taken since the Noseworthy Patent employs fatty acid derivatives and applicant's disclosure is not adequate to establish any difference between the ingredients of the reference and those in the instant application.

It is further noted that appellant has not come forth with any showing of unexpected results, or criticality regarding the selection of ingredients or the relative proportions thereof.

## Opinion

The solicitor, in his brief and at oral argument, asserts that the present appeal should be dismissed because appellant's reasons of appeal fail to allege error in the board's affirmance of the rejection of all claims under 35 U.S.C. § 112, first paragraph. Of the four reasons of appeal presented by appellant, only two are possibly relevant to this issue:

1. The U.S. Patent Office Board of Appeals erred in affirming the Examiner.

2. The U.S. Patent Office Board of Appeals erred in affirming the rejection of claims 1 through 8 under 35 U.S.C. § 112 as indefinite in failing to recite operative proportions.

■ In that we can find no rejection affirmed by the board based upon a lack of "operative proportions", the issue confronting us is whether reason of appeal no. 1, a broad, all-encompassing reason, is sufficient to satisfy 35 U.S.C. §§ 142, 143 and 144.[2] We must meet this issue head on, for this court has held that if we find the reasons of appeal inadequate, we must dismiss the present appeal for lack of jurisdiction. *In re Wesselman,* 127 F.2d 311, 29 CCPA 988 (1942); Contra, *In re LePage's Inc.,* 312 F.2d 455, 458, 50 CCPA 852, 856 (1963), (Rich, J., concurring).

We are well aware that this court has decided on numerous occasions that proper reasons of appeal must specifically touch all grounds of rejection. See *Pen-*

2. § 142. Notice of appeal

When an appeal is taken to the United States Court of Customs and Patent Appeals, the appellant shall give notice thereof to the Commissioner, and shall file in the Patent Office his *reasons of appeal, specifically set forth in writing,* within such time after the date of the decision appealed from, not less than sixty days, as the Commissioner appoints.

§ 143. Proceedings on appeal

The United States Court of Customs and Patent Appeals shall, before hearing such appeal, give notice of the time and place of the hearing to the Commissioner and the parties thereto. The Commissioner shall transmit to the court certified copies of all the necessary original papers and evidence in the case specified by the appellant and any additional papers and evidence specified by the appellee and in an ex parte case the Commissioner shall furnish the court with the grounds of the decision of the Patent Office, in writing, *touching all the points involved by the reasons of appeal.*

§ 144. Decision on appeal

The United States Court of Customs and Patent Appeals, on petition, shall hear and determine such appeal on the evidence produced before the Patent Office, and *the decision shall be confined to the points set forth in the reasons of appeal.* Upon its determination the court shall return to the Commissioner a certificate of its proceedings and decision, which shall be entered of record in the Patent Office and govern the further proceedings in the case. [Emphasis ours.]

*etrene Corp. v. Plough, Inc.,* 128 F.2d 591, 29 CCPA 1029 (1942); *In re Boyce,* 144 F.2d 896, 32 CCPA 718 (1944); *In re Gruschwitz,* 320 F.2d 401, 50 CCPA 1498 (1963), *cert. denied,* 375 U.S. 967, 84 S.Ct. 486, 11 L.Ed.2d 416 (1964); *In re Timmerbeil,* 320 F.2d 413, 50 CCPA 1514 (1963); *In re Wiechert,* 370 F.2d 927, 54 CCPA 957 (1967). However, there are, perhaps, an equal number of contrary decisions on the point. See *In re Wagenhorst,* 64 F.2d 780, 20 CCPA 991 (1933); *In re Kopplin,* 146 F.2d 1014, 32 CCPA 848 (1945); *In re Howell,* 298 F.2d 949, 49 CCPA 922 (1962); *In re Arnold,* 315 F.2d 951, 50 CCPA 1166 (1963).

■ Thus, we are faced with a situation where ample precedent is at hand for finding reason of appeal number 1 either adequate or inadequate. We conclude, on the record before us, that it does satisfy the requirements of 35 U.S.C. § 142. This is merely a common sense approach. At oral argument, the solicitor acknowledged that he was not misled by appellant's reasons of appeal in preparing the Commissioner's case before us, and we note that the solicitor's brief lucidly discusses and argues each and every rejection raised by the examiner and affirmed by the board. To dismiss the present appeal under these circumstances would place form above substance and benefit no one. The purpose of the pleadings is satisfied when they are sufficiently informative to the parties that they are able to present their case to the court for decision on the merits of the issues. In the final analysis, we agree with Judge Rich when he stated in his concurring opinion in *In re LePage's Inc.,* 312 F.2d 455, 467, 50 CCPA 852, 868 (1963):

> Looking upon the reasons of appeal as in essence a pleading, they should be considered sufficient if they get the parties and the issues and a sufficient record into court in such fashion that the court can deal with the issues. The business of modern courts is to decide issues and settle disputes and

not to make life unnecessarily difficult for litigants with no gain to itself. As a typical example of making life difficult and of a waste of judicial energy the above-mentioned *Sebald*[3] case will suffice.

■ Turning now to the merits of the present appeal, we are of the opinion that the prior art, taken as a whole, would render obvious appellant's claimed composition. Noseworthy discloses a "liquid antiseptic detergent composition useful as a skin cleanser." Although appellant describes his invention as a bovine hygienic agent, the claimed composition is also useful as a hand treatment. Appellant states in his specification, "[t]he material of the present invention heals and protects the dairyman's hands as well as the cow's udder."

Noseworthy's skin cleanser is taught to contain emollients such as lanolin, disinfectants such as hexachlorophene, ethylenediamine-tetraacetic acid disodium salt which the patentee describes as a chelating agent (but is identical to appellant's coupling agent), detergents such as the water soluble salts of higher alkyl aryl sulfonates and water.

Zbornik discloses a number of compositions containing a bacteriostat. One of these compositions, a shampoo, which is a skin treatment (i. e., the scalp), is composed in part of cocoanut oil, an alkali metal hydroxide, sodium hexametaphosphate, ethanol and water.

Although appellant claims compositions having differing proportions of ingredients from those of Noseworthy, we nevertheless agree with the board that "in the absence of some novel coaction to produce an effect beyond their mere additive effect there is nothing unobvious in the claimed compositions." Stated differently, a composition containing emollients, germicidal agents and detergents among other ingredients would be expected to be effective treatment for badly chapped hands and an aid in udder infection prevention. We agree with ap-

---

3. *In re Sebald,* 143 F.2d 366, 31 CCPA 1148 (1944).

pellant that not every ingredient is shown in a single prior art reference. However, when the ingredients are associated in an obvious manner set forth in the claims, they do not co-act with each other in any new or unexpected way and define nothing patentable over the prior art. See *In re Piazze,* 230 F.2d 426, 43 CCPA 812 (1956).

Appellant's data showing increased milk production achieved through the use of his preferred composition do not rebut this prima facie case of obviousness, for no comparison is made between his invention and prior art compositions. Appellant merely compares *untreated* cows with cows treated with the claimed composition.[4]

The Commissioner of Patents and Trademarks has moved, pursuant to our Rule 5.6(c), to assess appellant for the cost of printing the Examiner's Answer and the Notice and Reasons of Appeal. It is the solicitor's position that these papers are relevant docket entries, material to the present case, and should have been designated by appellant. Appellant counters that the Patent and Trademark Office did not comply with Rule 5.6(b) and, in a letter to the solicitor dated January 16, 1975, asserts that the Examiner's Answer is not material. Rule 5.6(a) states in part:

> [T]he appellant shall file 25 printed copies of a transcript of record which shall contain: (1) the relevant docket entries in the proceedings below; (2) relevant pleadings; * * * and (6) any other parts of the record to which the parties wish to direct the particular attention of the court.

■ At the outset, we hold that the Examiner's Answer is a "relevant docket entr[y] in the proceedings below" which should have been included in the printed transcript. The statute (35 U.S.C. § 141) says "[a]n applicant dissatisfied with the decision of the Board of Appeals may appeal." The decision is the act of the board saying whether each ground of rejection of the examiner which is appealed to it is right or wrong. *In re LePage's Inc.,* 312 F.2d at 459, 50 CCPA at 858 (1963), (Rich, J., concurring). Thus, without the Examiner's Answer, we are called upon to decide an appeal with only the *opinion* of the board which may or may not discuss every aspect of its decision.[5] See *In re Wagenhorst,* supra. Also, see Rule 196(a), 37 CFR 1.196(a).

■ In the present case, we further hold the Notice and Reasons of Appeal to be a relevant docket entry which should have been included in the printed transcript. As noted earlier, there was a question raised by the solicitor about the sufficiency of appellant's reasons of appeal. This issue was not frivolously raised. Perhaps, when the sufficiency of an appellant's Notice and Reasons of Appeal is not questioned, as is true in the vast majority of cases, it will not be necessary to include this docket entry in the printed record. However, if the solicitor presents persuasive reasons why we must decide the sufficiency of this particular paper, appellant should include it within the printed transcript of the record for our consideration.

■ Once the court has determined that the Examiner's Answer and Notice and Reasons of Appeal are relevant docket entries which should have been incorporated in the record (Rule 5.6(a)), is appellant now responsible to bear the burden of reimbursing the Patent and Trademark Office? We think not.

Appellant timely filed his petition on appeal (Rule 4.1(a)) followed by his designation of the parts of the record which he intended to include in the transcript within the prescribed 20 day period (Rule 5.6(b)), service being by mail on October 23, 1974 (Rule 5.1(a)). Although the so-

4. In view of our affirmance of the § 103 rejection, we find it unnecessary to decide the § 112 issue.

5. Many times, we encounter an Examiner's Answer which merely adheres to the final rejection without repeating each and every point raised therein. In such a situation, the final rejection would also be a relevant and material paper to be included within the printed transcript of the record.

licitor asserts that the Patent and Trademark Office did not receive appellant's designation of contents of the transcript prior to receipt of the transcript of the record, appellant did comply with Rule 5.1 by attaching his proof of service dated October 23, 1974, well in advance of the solicitor's receipt of the printed transcript. Rule 5.6(b) requires that "[i]f appellee believes the parts of the record designated by appellant are not sufficient, appellee shall, *within 10 days* after service of the designation, serve upon appellant a designation of additional parts to be included in the transcript." [Emphasis added.] In this case, the solicitor first informed appellant by letter dated January 2, 1975, of the Commissioner's desire to have the Examiner's Answer appended to appellant's brief. Therefore, appellee's motion to assess the cost of printing the Examiner's Answer and the Notice and Reasons of Appeal in the solicitor's brief is denied.

The decision of the board affirming the rejection of claims 1–8 is *affirmed.*

*Affirmed.*