Application of Edgar Gustave
GAUBERT.

Patent Appeal No. 75–574.

United States Court of Customs and
Patent Appeals.

Nov. 13, 1975.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, R. V. Lupo, Associate Solicitor, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, Associate Judges, and ALMOND, Senior Judge.

ALMOND, Senior Judge.

This is an appeal from the decision of the Patent and Trademark Office (PTO) Board of Appeals affirming the rejections of claims 1 and 2, all of the claims in application serial No. 219,932 filed January 24, 1975, entitled "Rotors and Stators of Electric Generators and Motors." The rejections were made under 35 U.S.C. §§ 101 and 112, first and second paragraphs. We reverse.

## The Invention

Appellant's invention is a rotor-stator structural combination for use in an electric generator or motor.

The rotor of the preferred embodiment is a pair of horseshoe magnets fastened together at their bases. Around the bases is wrapped a coil of wire with its ends connected to a conventional commutator or slip ring.

The stator member is a pair of oppositely disposed horseshoe magnets placed with the free ends facing and adjoining the free ends of the rotor magnets. Each stator magnet has a north pole facing the south pole of a rotor magnet and a south pole facing the north pole of the same rotor magnet. As the rotor turns, the north oriented arms of the rotor magnets are in the same plane with the south oriented arms of the stator magnets, and the south oriented arms of the rotor magnets are coplanar with the north oriented arms of the stator magnets. Additional coils may be wrapped around the stator magnets.

Claims 1 and 2, the only claims on appeal, are set forth below:

1. A rotor member made entirely or in part of one or several assembled pieces of iron, steel or any other magnetic material and to be used as a part of electric generators and motors and which comprises one or more horseshoe type or U shape type magnets or electromagnets with their magnetic poles placed side by side and parallel with the shaft of the rotor but separated from each other by one or more annular coils of wire made of electrical conducting material and wound on the cylindric root circumference of the rotor.

2. A stator member made entirely or in part of one or several assembled pieces of iron, steel or any other magnetic material and to be used as a part of electric generators or motors and which comprises one or more horseshoe type or U shape type magnets or electromagnets with their magnetic poles placed side by side and parallel with the shaft of the rotor but separated

1224

from each other by one or more annular coils of wire made of electrical conducting material.

### The Rejections

The rejections under 35 U.S.C. § 101 and 35 U.S.C. § 112, first paragraph, were that the device lacks utility by virtue of being inoperative and that the disclosure is not enabling. In support of these rejections, the board cited a section of *University Physics*[1] showing a generator of the type in which the rotor coil rotates about an axis perpendicular to and through a stationary magnetic field. The board explained that the specification failed to describe a device of the type shown in *University Physics*, raised some questions about construction details and operation, and concluded the device was inoperative and inadequately disclosed. The claims were further rejected as indefinite under 35 U.S.C. § 112, second paragraph.

### OPINION

#### The Reasons of Appeal

■ The solicitor's memorandum submits that the reasons of appeal fail to cover each ground of rejection expressly. The purpose of the reasons of appeal is to alert the parties to the issues before the court. In *In re Castner*, 518 F.2d 1234 (CCPA 1975), this court adopted the view of the concurring opinion of Judge Rich in *In re LePage's Inc.*, 312 F.2d 455, 467, 50 CCPA 852, 868 (1963), where he stated:

Looking upon the reasons of appeal as in essence a pleading, they should be considered sufficient if they get the parties and the issues and a sufficient record into court in such fashion that the court can deal with the issues. The business of modern courts is to decide issues and settle disputes and

not to make life unnecessarily difficult for litigants with no gain to itself.

Although somewhat unconventional, due perhaps in part to the *pro se* nature of the case, the reasons of appeal are sufficient to alert the solicitor that appellant is appealing the rejection of claims 1 and 2 under 35 U.S.C. § 101 and 35 U.S.C. § 112, first and second paragraphs. There is no indication that the solicitor was misled.

#### The Rejection Under 35 U.S.C. § 101

■ Turning now to the merits, the Patent and Trademark Office has rejected both claims under 35 U.S.C. § 101[2] asserting that appellant's device lacks utility by reason of being inoperative.

In *In re Langer*, 503 F.2d 1380, 1391–92 (CCPA 1974), we set forth the test for a prima facie case of lack of utility saying:

As a matter of Patent Office practice, a specification which contains a disclosure of utility which corresponds in scope to the subject matter sought to be patented *must be taken as sufficient to satisfy the utility requirement of § 101* for the entire claimed subject matter *unless there is reason for one skilled in the art to question the objective truth of the statement of utility* or its scope. Assuming that sufficient reason to question the statement of utility and its scope does exist, a rejection for lack of utility under § 101 will be proper on that basis; such a rejection can be overcome by suitable proofs indicating that the statement of utility and its scope as found in the specification are true. [Emphasis ours.]

Accordingly, the PTO must do more than merely question operability—it must set forth *factual reasons* which would lead

1. F. Sears & M. Zemansky, *University Physics*, 610–13 (2d ed. 1955).

2. 35 U.S.C. § 101. Inventions patentable.
Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

one skilled in the art to question the objective truth of the statement of operability.

Electromotive force is induced in a coil which is subjected to a changing magnetic flux field. This condition can be brought about in several ways—by spacially moving the coil in a stationary, constant flux field as *University Physics* illustrates, by spacially moving a constant magnetic flux field relative to a stationary coil, by varying the magnitude of a magnetic flux field passing along the axis of a stationary coil, just to name a few.

It is clear from the specification that appellant's device does not involve moving the rotor coil with respect to the magnetic flux field, *i. e.* the method illustrated by *University Physics.* The specification states:

> My method used to generate an electric current is very different from the method used in the conventional generators in which the electrical conducting wires of the rotor winding must change position with respect to the magnetic lines of force and cut them while in my invention it is the magnetic core of the rotor with its projections which does the cutting of the lines of force.

So rotation of the rotor does not cause the coil to cut a magnetic flux; rather, the rotation causes oscillations in the magnetic flux passing along the iron core (horseshoe magnets) of the rotor coil. The oscillations in magnetic flux result from the cyclic changes in the spacing of the rotor and stator magnets.

The PTO has shown only that the coil does not cut stationary flux lines as it rotates. Because this is not the only way to generate electricity, this fails to

establish that the conditions for generating electric energy are absent. When there are several methods for producing the desired effect, including obvious and reasonable alternatives, a mere showing of the non-use of a disclaimed alternative is not sufficient to show inoperability.

Thus the facts relied upon are insufficient, in view of appellant's disclosure, to support the rejection under 35 U.S.C. § 101 for lack of operability of the claimed invention.

The board found "the solution proposed by appellant for the eddy current problem questionable." This comment was apparently based on the abstract of the specification which, we note, says that it is "possible" to neutralize eddy currents [3] with the invention; and on appellant's statement in his request for reconsideration, namely: "I therefore succeeded in eliminating the eddy currents while retaining the useful current . . . ." However, the appealed claims do not recite that the apparatus alleviates eddy currents. Thus, failure of the apparatus to solve the eddy current problem is not dispositive of the question of operability of the *claimed subject matter.*

Since there has been no showing that the basic conditions necessary for a generator/motor are absent, the rejection under 35 U.S.C. § 101 is reversed.

*The Rejection Under 35 U.S.C. § 112, First Paragraph*

■ With regard to the rejection of claims 1 and 2 under 35 U.S.C. § 112, first paragraph,[4] we set forth the following test for satisfying the enablement requirement of 35 U.S.C. § 112, first

---

3. Eddy currents are set up in a conductor by variation of an applied magnetic field resulting in power loss and a reduction of magnetic flux.

4. 35 U.S.C. § 112. Specification.

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

paragraph, in *Martin v. Johnson*, 454 F.2d 746, 751, 59 CCPA 769, 775 (1972):

To satisfy § 112, the specification disclosure must be sufficiently complete to enable one of ordinary skill in the art to make the invention without undue experimentation, although the need for a minimum amount of experimentation is not fatal. . . . Enablement is the criterion, and every detail need not be set forth in the written specification if the skill in the art is such that the disclosure enables one to make the invention. [Citations omitted.]

The board first questioned how the coil is wound on the rotor. We find appellant's specification describes the coil as "annular" windings "made on the cylindric root circumference of the rotor." *Webster's Seventh New Collegiate Dictionary* (1965) defines "root" as:

a: the lower part: base b: the part by which an object is attached to something else . . . .

In an H-shaped rotor, formed by connecting two U-shaped elements about a shaft, a person having ordinary skill in the art would have no trouble determining that the root must be the cross bar of the H—the base to which the four arms are attached securing the whole assembly to the shaft. The root circumference is the cylinder which defines the exterior surface of the cross bar. Hence, a coil formed on the cylindric root circumference of the rotor is wound with its axis along the shaft and each loop virtually in a plane perpendicular to the shaft.

Second, the board questioned the nature of the commutator structure. Given that an electromotive force is induced in the rotor coil, we do not foresee one skilled in the art encountering any difficulty in drawing this energy off by using conventional techniques. The board set forth no basis for suspecting such

technical difficulties. Conversely, we see no technical problems in supplying electric energy to the rotor coil to cause the device to function as a motor.

Last, the board questioned whether the materials are laminar. Appellant states that the invention "will increase the possibility of using solid material instead of the very expensive laminates." This choice of construction appears to be a matter of preference going to the efficiency, not the operability, of the resultant device. We see no reason why laminations would be required for operability nor any reason why laminations would make the device inoperative.

Thus, the specification is sufficiently detailed to enable one skilled in the art to make and use the claimed invention and the rejection under 35 U.S.C. § 112, first paragraph, is reversed.

### The Rejection Under 35 U.S.C. § 112, Second Paragraph

 Claims 1 and 2 were further rejected under 35 U.S.C. § 112, second paragraph,[5] as being vague and indefinite. Claims 3 and 4, submitted after the board's decision, were filed too late and were not considered by the board. Accordingly, claims 3 and 4 cannot be reviewed or considered by this court.

In *In re Hammack*, 427 F.2d 1378, 1382, 57 CCPA 1225, 1231 (1970), we said:

All provisions of the statute must be complied with in order to obtain a patent. The requirement stated in the second paragraph of section 112 existed long before the present statute came into force. Its purpose is to provide those who would endeavor, in future enterprise, to approach the area circumscribed by the claims of a patent, with the adequate notice demanded by due process of law, so that they may more readily and accurately determine the boundaries of protection

---

5. 35 U.S.C. § 112, second paragraph, states in relevant part:

The specification shall conclude with one or more claims particularly pointing out and dis-

tinctly claiming the subject matter which the applicant regards as his invention.

involved and evaluate the possibility of infringement and dominance.

In the present case we find that the alternate expressions objected to by the board do not render the boundaries of the invention undeterminable. Claim 1 starts with "made entirely or in part of" which is to say "made at least partially of"; the phrase "one or several pieces" means the same as "at least one piece"; in the phrase "iron, steel or any other magnetic material" the words "iron" and "steel" are just examples of common magnetic materials. Similarly, the other alternate expressions in claims 1 and 2, although somewhat ungainly, nevertheless accurately determine the boundaries of protection involved. Perforce, the rejection of claims 1 and 2 under 35 U.S.C. § 112, second paragraph is reversed.

*Reversed.*